S13A0225. LEWIS v. THE STATE.
S13A0226. CLARK v. THE STATE.
(744 SE2d 21)

BENHAM, Justice.

Appellants Atu Lewis (Lewis) and Jacque Dominique Clark (Clark) were convicted of murder and related crimes stemming from a home invasion that took place in Clayton County.[1] Lewis was sentenced to life in prison without parole for malice murder and a term of years for his other crimes.[2] Clark was sentenced to life in

---

[1] The crimes took place on June 21, 2007. On February 14, 2008, a Clayton County grand jury returned an indictment against appellants along with two other co-defendants on charges of malice murder, three counts of felony murder, six counts of aggravated assault, four counts of burglary, one count of armed robbery, three counts of kidnapping, three counts of false imprisonment, three counts of cruelty to children in the first degree, and four counts of possession of a weapon during the commission of a crime. From June 16, 2010, to June 25, 2010, appellants Lewis and Clark were tried together before a jury. One count of aggravated assault and one count of burglary were resolved nolle prosequi on the eve of trial. The jury found appellant Lewis guilty on all remaining counts. The jury acquitted appellant Clark of malice murder, but found him guilty on all remaining counts.

[2] On June 29, 2010, the trial court sentenced appellant Lewis as follows: life without parole for malice murder; life with parole for armed robbery to be served concurrently to the sentence for malice murder; twenty years for burglary to be served concurrently to the sentence for malice murder; twenty years for each of three counts of cruelty to children to be served concurrently to the sentence for malice murder; twenty years for each of three counts of aggravated assault to be served concurrently as to each other and consecutively as to the sentence for malice murder; life with parole for each of three counts of kidnapping to be served concurrently as to each other and consecutively as to the sentence for malice murder; five years for one count of possession of a weapon during the commission of a crime to be served consecutively to the sentence for malice murder; and five years for each of three counts of possession of a weapon during the commission of a crime to be served concurrently as to each other and consecutively as to the sentences for kidnapping. The remaining counts for which Lewis was convicted were merged and/or vacated as a matter of law. Lewis moved for a new trial on July 9, 2010, and amended the motion on July 19, 2010, December 29, 2010, and January 10,

·prison with parole for felony murder and a term of years for his remaining crimes.[3] For reasons set forth below, the appellants' convictions are affirmed.

The underlying facts show that on the morning of June 21, 2007, Lewis, Clark, Marcel Brower, and Hilarie Ford acted on a plan to steal drugs and money from the victim Troy Marine. Brower testified at trial[4] and explained that the group's plan was for Ford to call the victim, to offer him a private dance as a ruse to gain access to his house, and to unlock the front door for the other three to enter the house and rob the victim while Ford was keeping him distracted. Lewis and the other two men armed themselves with guns provided by Lewis. Brower stated he was armed with a .40 caliber weapon, Lewis had a 9mm handgun, and Clark had a .38 caliber gun. Clark brought shoestrings for the purpose of tying up the victim. All four drove together to the victim's house. Once Ford entered the house, she alerted Brower by cell phone that there were children in the house and that she could not unlock the front door. Lewis and the other men entered the victim's house by breaking and going through a side window.

After entering the house, the men encountered the victim's three children (two boys who were eleven and ten years old and a five-year-old girl) in an upstairs bedroom, and Brower moved the children downstairs, making them lie down on the floor with pillows over their heads. Clark watched over the kids. The victim was oblivious to the circumstances of his children because Ford had the music playing loudly in the victim's bedroom and because the bedroom door was

---

2012. The trial court held a hearing on January 10, 2012, and denied the motion for new trial on April 25, 2012. Lewis filed a notice of appeal on May 4, 2012. Lewis's appeal was docketed to this Court's January 2013 term for a decision to be made on the briefs.

[3] On June 29, 2010, the trial court sentenced appellant Clark as follows: life with parole for felony murder; life with parole for armed robbery to be served concurrently to the sentence for felony murder; twenty years for each of two counts of aggravated assault to be served concurrently to the sentence for armed robbery; life with parole for each of three counts of kidnapping to be served concurrently as to each other and consecutively as to the sentence for felony murder; twenty years for each of three counts of cruelty to children to be served concurrently to the sentences for kidnapping; five years for one count of possession of a weapon during the commission of a crime to be served consecutively to the sentence for felony murder; and five years for each of three counts of possession of a weapon during the commission of a crime to be served concurrently as to each other and consecutively as to the sentences for kidnapping. The remaining counts for which Clark was convicted were merged and/or vacated as a matter of law. Clark filed a motion for new trial on July 8, 2010, and amended it on February 25, 2011, and on January 10, 2012. The trial court denied the motion on April 25, 2012. Clark filed his notice of appeal on May 3, 2012. Clark's appeal was docketed to this Court's January 2013 term for a decision to be made on the briefs.

[4] At the time of the trial, Brower stated he intended to plead guilty to the crimes for which he was indicted, but had not yet entered his plea.

locked. Brower took the victim's younger son by gunpoint, brought him upstairs to where Lewis was standing, and they made the boy knock on the bedroom door until the victim opened it. When the victim opened the door and saw the men with guns and his son, he immediately started throwing punches, knocking Lewis into the wall. In response, Lewis shot the victim. After the shooting, the victim's oldest son testified that the three men fled the house through the front door. A next-door neighbor testified that she saw three men exiting the victim's house and two of them enter a vehicle, while the other man ran up the street. Brower confirmed that he and Lewis drove away in the vehicle, picking up Clark who had run up the street on foot. Ford, who had been left behind at the victim's house, called Clark who instructed her to wipe away fingerprints at the scene. After driving for a time and letting Clark out of the car, Brower and Lewis circled back and picked up Ford in a different subdivision. When they picked her up, Ford had with her a pound of marijuana from the victim's house which Brower later took to sell. Clark's roommate testified that Clark called him that same day and said he had just killed somebody and asked the roommate for a ride.

After the perpetrators left the house, the victim's children ran across the street to a neighbor's house and called police. At the scene, the police recovered a 9mm shell casing. They also obtained latent palm and finger prints from the scene and the car used during the crime. The palm and finger prints were eventually found to match the known palm and finger prints of Brower and Lewis. Blood evidence recovered from the car matched Lewis's DNA and was consistent with Brower's testimony that Lewis injured his hand when he broke the window to enter the victim's house. Several witnesses, including Brower, testified that at the time the crimes took place, Lewis and Clark both had shoulder-length dreadlocks. The victim's eldest son testified that two of the perpetrators had dreadlocks and the third had short hair. Brower was apprehended first and, about a week after the crime, Lewis, Clark, and Ford were apprehended on drug charges while driving in Clark's vehicle in Laurens County. The state trooper who stopped Lewis and Clark in Laurens County testified that both men had bad hair cuts and police recovered hair clippers from Clark's car after it was impounded upon his arrest in Laurens County.

The medical examiner testified that the shooter was within four feet of the victim when he was shot and the bullet pierced the victim's heart, diaphragm, and liver causing his death.

*Case No. S13A0225*

1. Lewis claims the evidence was insufficient to convict him for malice murder and the other charges for which he was convicted based on the fact that the State's key witness was Brower, an accomplice to the crime. See OCGA § 24-4-8 (2012).[5] Lewis argues that Brower's testimony was uncorroborated and therefore the evidence against him was insufficient to convict. We disagree. This Court has held that "slight evidence from an extraneous source identifying the accused as a participant in the criminal act is sufficient corroboration of the accomplice to support a verdict." *Moore v. State*, 288 Ga. 187, 189 (1) (702 SE2d 176) (2010) (citations and punctuation omitted). Here there was slight evidence from an extraneous source identifying Lewis as a participant in the crime. Specifically, authorities found Lewis's blood and palm print on the car used during the crime which evidence corroborated Brower's testimony that Lewis injured himself on the broken glass of the window the men used to gain entry to the victim's house. The authorities found a hole in the wall of the victim's house where both Brower and the victim's son described a struggle took place in which Lewis was pushed into the wall. The victim's son testified that two of the men who entered his home wore dreadlocks, and witnesses in addition to Brower testified that Lewis wore dreadlocks at the time the crime occurred. When Lewis was apprehended a week later, he had altered his appearance by cutting his dreadlocks, presumably to avoid detection by police. The evidence adduced at trial and summarized above was sufficient to authorize a rational trier of fact to find appellant Lewis guilty beyond a reasonable doubt of the crimes for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. Lewis alleges the trial court erred when it allowed the admission of testimony which he contends improperly placed his character into evidence and erred when it failed to grant a mistrial based on the State's violation of discovery rules in regard to the information elicited from the testimony. At trial, Brower testified Lewis told him that Lewis and Clark had a conversation about killing Ford, purportedly to prevent her from telling police about the shooting. Lewis argues he was unaware of Brower's statement about the alleged conversation because the State failed to produce it during discovery.

---

[5] OCGA § 24-4-8 (2012) was repealed on January 1, 2013, coinciding with the effective date of Georgia's new Evidence Code, and replaced by OCGA § 24-14-8 with only slight revision. Since the trial in this case occurred prior to January 1, 2013, OCGA § 24-4-8 (2012) was still applicable at the time.

The transcript shows prosecutors learned of this alleged conversation between Lewis and Clark when they interviewed Brower during their trial preparation a few weeks prior to trial. Rather than precluding Brower's testimony or granting a mistrial, the trial court allowed counsel for Lewis and Clark to interview Brower about the alleged conversation between Lewis and Clark. After interviewing Brower, counsel did not posit any further objections concerning the testimony.

(a) The testimony at issue was admissible even if it incidentally placed Lewis's character into evidence. "Any statement or conduct of a person, indicating a consciousness of guilt, where such person is, at the time or thereafter, charged with or suspected of crime, is admissible against him upon his trial for committing it." *Bridges v. State*, 246 Ga. 323 (2) (271 SE2d 471) (1980) (citations, punctuation and emphasis omitted). Brower's testimony showed Lewis's consciousness of guilt for the death of the victim and was admissible on that basis. Id. The incidental placement of Lewis's character into evidence did not render Brower's relevant testimony inadmissible. See *Sweet v. State*, 278 Ga. 320 (7) (602 SE2d 603) (2004). Accordingly, the trial court did not err when it allowed Brower's testimony over Lewis's objection that his character was impermissibly placed into evidence.

(b) Lewis contends he was entitled to a mistrial because the State failed to provide Brower's statement about Lewis's and Clark's alleged conversation during discovery. See OCGA § 17-16-6.[6] This allegation of error lacks merit. The record shows Brower was available to the parties for interview through his attorney prior to trial. The testimony Brower provided at trial had not been reduced to a writing or otherwise recorded, but rather had been revealed during an interview the State conducted for the purposes of trial preparation. Thus, there was nothing tangible for the State to produce during discovery. As such, there was no discovery violation that would warrant any sanction, including a mistrial. The trial court acted in keeping with the dictates of OCGA § 17-16-6 when it remedied any lapse of information or perceived lack of fairness by allowing Lewis and Clark to interview Brower about this issue. There was no reversible error.

---

[6] OCGA § 17-16-6 provides in relevant part:

If at any time during the course of the proceedings it is brought to the attention of the court that the state has failed to comply with the requirements of this article, the court may order the state to permit the discovery or inspection, interview of the witness, grant a continuance, or, upon a showing of prejudice and bad faith, prohibit the state from introducing the evidence not disclosed or presenting the witness not disclosed, or may enter such other order as it deems just under the circumstances. . . .

3. Lewis contends the record is incomplete because the charge conference between the attorneys and the trial court was not transcribed. Any omission from the record is a matter for the trial court. See OCGA § 5-6-41 (f). Since it appears Lewis did not pursue this matter with the trial court, the issue is not before this Court for review.

## Case No. S13A0226

4. Clark claims the evidence was insufficient to convict him on the basis that Brower's testimony was uncorroborated. This enumeration of error lacks merit because there was slight evidence corroborating Brower's testimony that Clark participated in the crimes leading to the victim's death. See *Moore v. State*, supra, 288 Ga. at 189. Witnesses in addition to Brower testified that Clark had dreadlocks at the time the crimes occurred. When Clark was apprehended in Laurens County a week after the victim was killed, however, he had a bad hair cut and hair clippers were found in the trunk of his car, which was evidence indicating Clark altered his appearance in an attempt to avoid detection by police. Cell phone records showed Ford called Clark shortly after the shooting, which evidence corroborated Brower's testimony that Clark told Ford over the phone to wipe away any fingerprints at the victim's house. Clark's roommate testified that Clark called him on the day of the shooting and said he had killed someone. The evidence adduced at trial and summarized above was sufficient to authorize a rational trier of fact to find appellant Clark guilty beyond a reasonable doubt of the crimes for which he was convicted. *Jackson v. Virginia*, supra, 443 U. S. 307.

5. Clark contends a picture of Lewis's hand taken by the lead detective in the case should not have been admitted because it had writing on it by the lead detective. This enumeration of error is not properly before this Court for review because Clark did not object to the admission of the evidence. See *Castillo v. State*, 281 Ga. 579 (6) (642 SE2d 8) (2007).

6. During the prosecutor's opening statement, he used a powerpoint presentation that included two photographs of the victim's house. Clark objected to the use of the photographs because they had not yet been admitted into evidence. The trial court sustained his objection, and the prosecutor continued his opening statement without using the powerpoint presentation or showing any other photographs to the jury. The two photographs the jury saw during the State's opening were later admitted into evidence without objection. Clark contends the trial court erred when it did not declare a mistrial sua sponte. "The decision to grant a mistrial is within the discretion

of the trial court and will not be disturbed on appeal unless there is a showing that a mistrial is essential to the preservation of the right to a fair trial." *Jackson v. State*, 292 Ga. 685 (4) (740 SE2d 609) (2013). It appears that the only problem Clark has with the two photographs was the timing of their presentation to the jury and not their substance as they were eventually admitted into evidence without objection. The trial court remedied the timing issue immediately when it precluded the prosecutor from using any other photographs during his opening statement. At the close of evidence, the trial court also instructed the jury that opening statements were not evidence. The trial court's actions preserved Clark's right to a fair trial, and the trial court did not abuse its discretion when it did not declare a mistrial sua sponte. See id.; *Dolphy v. State*, 288 Ga. 705 (2) (a) (707 SE2d 56) (2011).

*Judgments affirmed. All the Justices concur.*

DECIDED JUNE 3, 2013.

*Cerille B. Nassau*, for appellant (case no. S13A0225).
*Darrell B. Reynolds, Sr.*, for appellant (case no. S13A0226).
*Tracy Graham-Lawson, District Attorney, Elizabeth A. Baker, Erman J. Tanjuatco, Kathryn L. Powers, Frances C. Kuo, Assistant District Attorneys, Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Benjamin H. Pierman, Assistant Attorney General*, for appellee.