294 Ga. 845
FINAL COPY

S13A1344. BOSTIC v. THE STATE.

HINES, Presiding Justice.

Anthony Idris Bostic appeals from his convictions and sentences for: the malice murder of Brian Patterson; the aggravated assaults of Quantavious Robinson, Dwayne Branker, Twahnica Mills, Latavia Hollinger, Anastecia Davis-Romero, Sandricka Meyers, Brittany Head, Isaiah Chandler, and Matthew Dowdy; and the possession of a firearm during the commission of a crime. For the reasons that follow, we affirm.[1]

---

[1] The crimes were committed on April 13, 2009. On September 1, 2010, a Clayton County grand jury indicted Bostic, together with Eric Mathews, for malice murder, felony murder while in the commission of the aggravated assault of Patterson, the aggravated assault of Patterson, the aggravated assault of Robinson, the aggravated assault of Branker, the aggravated assault of Mills, the aggravated assault of Hollinger, the aggravated assault of Davis-Romero, the aggravated assault of Meyers, the aggravated assault of Head, the aggravated assault of Chandler, the aggravated assault of Dowdy, and possession of a firearm during the commission of the crime of aggravated assault against Patterson; additional counts were alleged against Mathews and two other persons. Bostic was tried alone before a jury February 7-9, 2011, and found guilty of all charges. On February 24, 2011, he was sentenced to life in prison for malice murder, concurrent terms of 20 years for all aggravated assault charges except that concerning Patterson, and a consecutive term of five years in prison for possession of a firearm during the commission of a crime; the remaining charges either merged with a crime for which a sentence was entered or were vacated by operation of law. See *Malcolm v. State*, 263 Ga. 369, 371-374 (4) (5) (434 SE2d 479) (1993). Bostic moved for a new trial on February 24, 2011, and amended the motion on December 5, 2011. On February 8, 2012, the motion, as amended, was denied. On September 10, 2012, Bostic moved for an out-of-time appeal, which was granted that same day. On September 11, 2012, Bostic filed a notice of appeal; the appeal

Construed to support the verdicts, the evidence showed that Patterson, in company with Branker and Robinson, walked from a store to a pizza parlor to purchase a pizza. While in the pizza parlor, Patterson observed Bostic and Eric Mathews, acquaintances of his, outside in a car. Patterson made a derogatory comment regarding Bostic and Mathews; Patterson and Branker went outside the pizza parlor and Robinson stood in the doorway. Mathews, who was driving the car, pulled into the parking lot of the pizza parlor; from a window of the car, Bostic fired several shots toward Patterson and his companions, missing Branker, striking Robinson once in the foot, and fatally striking Patterson once in the chest. Bullets entered the pizza parlor, shattering the front glass. Inside the pizza parlor, customer Dowdy was walking toward the exit, and employees Head, Mills, Meyers, Hollinger, Chandler, and Davis-Romero were working, all of whom retreated further into the pizza parlor when the shots were fired. Patterson did not have anything in his hands when he was outside the pizza parlor, but just before the shooting, made a gesture with his hands; there was a revolver either in Patterson's back pants pocket, or tucked inside the waistband of his pants behind his back. The revolver fell onto the sidewalk when Patterson

was docketed in this Court for the September 2013 term and submitted for decision on the briefs.

fell after being shot; it contained one unfired cartridge, and the revolver had not been fired recently.

Mathews drove the car containing Bostic rapidly from the crime scene. Bostic lived near the pizza parlor, and shortly after the shooting asked a roommate for a ride; when leaving his home, Bostic directed the roommate to drive in the opposite direction from the pizza parlor, which was an indirect route to his destination. During the drive, Bostic said "we murked" some people; "murked" is another term for "killed." Bostic also admitted to Mathews's girlfriend that he "shot the guy."

1. Bostic contends the evidence against him was insufficient to support his convictions, raising several arguments. First, Bostic contends that firing his weapon was justified as an act of self-defense. *State v. Green*, 289 Ga. 802, 804 (2) (716 SE2d 194) (2011); *Crawford v. State*, 267 Ga. 543, 544 (2) (480 SE2d 573) (1997). Bostic testified at trial that Patterson had previously tried to rob him at gunpoint, and that when he and Mathews arrived at the pizza parlor at the time of the shooting, Patterson immediately began running toward the car, reaching for a firearm, and that he shot Patterson in fear of his life; he admitted that he did not see any weapon. The jury was instructed on the law pertaining

2

to the defense of justification of self. "When this Court reviews the sufficiency of the evidence, it does not re-weigh the evidence or resolve conflicts in witness testimony, but instead it defers to the jury's assessment of the weight and credibility of the evidence. [Cit.]" *Greeson v. State*, 287 Ga. 764, 765 (700 SE2d 344) (2010). The question of justification was a matter for the jury, which was free to reject Bostic's version of the events. *Roper v. State*, 281 Ga. 878, 880 (1) (644 SE2d 120) (2007).

The jury found Bostic guilty of felony murder, and he asserts that the evidence of that crime was insufficient, as the State did not show which of the aggravated assault charges specifically supported the felony murder charge. However, Bostic was not sentenced for felony murder. See *Malcolm v. State*, 263 Ga. 369, 371-372 (4) (434 SE2d 479) (1993). Thus, "any issue with regard to [Bostic's] felony murder count is now moot because his felony murder conviction was vacated by operation of law based on his conviction for the charge of malice murder." *Hoehn v. State*, 293 Ga. 127, 130 (3) (744 SE2d 46) (2013) (Citation and punctuation omitted.)

Bostic also argues that there was no evidence of an aggravated assault on Hollinger, because the indictment named "Latana Hollinger" as the victim, and

when Hollinger testified, she gave her name as "Latavia Hollinger." However, "[a] variance between the victim's name as alleged in the indictment and as proven at trial is not fatal if the two names in fact refer to the same individual, such as where a mere misnomer is involved." *Tarvin v. State*, 277 Ga. 509, 510 (3) (591 SE2d 777) (2004) (Citation and punctuation omitted.) Testimony proved that the victim was Latavia Hollinger, and it is clear that the two names referred to the same individual. The challenge to the sufficiency of the evidence on this basis has no merit. Id. at 510 (1).

Additionally, aggravated assault victims Mills and Meyers did not testify at trial, and Bostic urges that there was thus no evidence of either woman having been placed in reasonable apprehension of receiving a violent injury, as set forth in the jury charges. See OCGA §§ 16-5-20 (a)[2] and 16-5-21 (a).[3] But, the

---

[2] OCGA § 16-5-20 (a) provides:
> (a) A person commits the offense of simple assault when he or she either:
> (1) Attempts to commit a violent injury to the person of another; or
> (2) Commits an act which places another in reasonable apprehension of immediately receiving a violent injury.

[3] OCGA § 16-5-21 (a) provides:
> (a) A person commits the offense of aggravated assault when he or she assaults:
> (1) With intent to murder, to rape, or to rob;
> (2) With a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury; or

4

failure of a victim of an assault to testify at trial does not necessarily result in the evidence against the defendant being insufficient.

> The state of mind of the victim of an assault is a question of fact, which may be established by circumstantial evidence. Proof that the victim has been placed in apprehension of immediately receiving a violent injury need not necessarily be solely by reason of the victim's testimony of his mental state but may be inferred from the conduct of the victim such as when he retreats to secure his safety.

*Howard v. State*, 288 Ga. 741, 742 (1) (707 SE2d 80) (2011) (Citations and punctuation omitted.) And, the evidence regarding the retreat of Mills and Meyers was sufficient circumstantial evidence as to their states of mind.

The evidence authorized the jury to find Bostic guilty beyond a reasonable doubt of all of the crimes of which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. While awaiting trial, Bostic was incarcerated. The State introduced the testimony of a fellow inmate to the effect that Bostic had said to another prisoner that Bostic would "win his case," because "his people [would] put the guy that ID'd him at the scene of the crime . . . to sleep," which would mean that

---

(3) A person or persons without legal justification by discharging a firearm from within a motor vehicle toward a person or persons.

the State would "not be able to go to the grand jury and indict him and he will walk free." Bostic contends that this testimony should not have been admitted because it was hearsay, irrelevant to the crimes charged, improperly placed his character in issue, and, even if otherwise admissible, should have been excluded because it was unfairly prejudicial to him to an extent that the probative value of the evidence was outweighed.[4] However, these contentions are unavailing.

Admissions of a party opponent are admissible as exceptions to the hearsay rule. *Tennyson v. State*, 282 Ga. 92, 93 (3) (646 SE2d 219) (2007). The testimony was, at the very least, relevant to show Bostic's consciousness of his guilt, and "'[a]ny statement or conduct of a person, indicating a consciousness of guilt, where such person is, at the time or thereafter, charged with or suspected of crime, is admissible against him upon his trial for committing it.' [Cit.]" *Lewis v. State*, 293 Ga. 110, 114 (2) (a) (744 SE2d 21) (2013). This is true even if it incidentally placed Bostic's character into evidence. Id. To the extent that Bostic argued in the trial court that the probative value of the

---

[4] In this Court, Bostic cites OCGA § 24-4-403 as authority for this proposition. That Code section was not in effect at the time of his trial. OCGA § 24-4-403 reads:

> Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

evidence was outweighed by unfair prejudice to him, the trial court did not abuse its discretion in admitting the evidence. See *Sifuentes v. State*, 293 Ga. 441, 445 (3) (746 SE2d 127) (2013). Evidence of Bostic's consciousness of guilt was certainly relevant at his trial. *Lewis*, supra. Any question as to the truth of the witness's testimony was, as the trial court noted, for the jury's resolution, and there was no danger that the jury would use the evidence to convict Bostic on grounds other than proof of the offenses charged. See *Ross v. State*, 279 Ga. 365, 366-367 (2) (614 SE2d 31) (2005).

3. During the conference on the jury charges, Bostic withdrew his previous request that the jury be charged on the law of voluntary manslaughter. He now contends that the trial court should, nonetheless, have given such a charge sua sponte. Bostic testified that he shot Patterson in fear of his own life, and the court instructed the jury on the defense of justification. It therefore cannot be said that Bostic's sole defense to the charge of malice murder was that he was guilty of only the lesser included offense of voluntary manslaughter, and the court had no obligation to instruct the jury on the law of voluntary manslaughter sua sponte. See *Johnson v. State*, 275 Ga. 630, 631 (2) (570 SE2d 309) (2002); *Tarvestad v. State*, 261 Ga. 605, 606 (409 SE2d 513)

7

(1991).

4. Bostic asserts that his trial counsel failed to provide effective representation in certain respects. In order to prevail on such a claim, he must show both that counsel's performance was deficient, and that the deficient performance was prejudicial to his defense. *Smith v. Francis*, 253 Ga. 782, 783 (1) (325 SE2d 362) (1985), citing *Strickland v. Washington*, 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984). To meet the first prong of the required test, he must overcome the "strong presumption" that counsel's performance fell within a "wide range of reasonable professional conduct," and that counsel's decisions were "made in the exercise of reasonable professional judgment." Id. The reasonableness of counsel's conduct is examined from counsel's perspective at the time of trial and under the particular circumstances of the case. Id. at 784. To meet the second prong of the test, he must show that there is a reasonable probability that, absent any unprofessional errors on counsel's part, the result of his trial would have been different. Id. at 783. "'We accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.' [Cit.]" *Robinson v. State*, 277 Ga. 75, 76 (586 SE2d 313) (2003).

(a) Bostic contends that counsel should have challenged the sufficiency of the indictment as to the felony murder count as not specifying which allegation of aggravated assault supported felony murder. However, as noted above, Division 1, supra, the felony murder conviction was vacated by operation of law, and any issue regarding it is moot. *Hoehn*, supra. Accordingly, failing to raise such a challenge was not prejudicial to Bostic's defense.

(b) Trial counsel initially requested a jury charge on voluntary manslaughter. See Division 3, supra. After the court discussed the charge that it would give on self-defense, the State declared that it had no objection to a jury charge on voluntary manslaughter as a lesser included offense to malice murder; after asking for a pause in the proceedings, counsel for Bostic declared: "we withdraw the voluntary manslaughter [charge request]."[5] Although Bostic now asserts that withdrawing the request constituted ineffective assistance of counsel, in his motion for new trial, as amended, Bostic raised other issues of ineffective assistance of trial counsel, but did not include any assertion that this

_____

[5] At this point, the trial court opined that the instruction appeared to be inconsistent with the evidence.

was an instance of such.  Thus, appellate review of the issue is waived.[6] *Bryant v. State*, 282 Ga. 631, 639 (8) (651 SE2d 718) (2007); *Wilson v. State*, 277 Ga. 195, 199 (2) (586 SE2d 669) (2003).

Judgments affirmed.  All the Justices concur.

Decided March 28, 2014.

Murder. Clayton Superior Court. Before Judge Simmons.

Stanley W. Schoolcraft III, for appellant.

Tracy Graham-Lawson, District Attorney, Frances C. Kuo, Elizabeth A. Baker, Billy J. Dixon, Assistant District Attorneys, Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Katherine L. Iannuzzi, Assistant Attorney General, for appellee.

---

[6] During the hearing on the motion for new trial, Bostic did not attempt to introduce evidence to show that withdrawing the request was anything other than a reasonable strategic decision. See *Jimmerson v. State*, 289 Ga. 364, 369 (2) (e) (711 SE2d 660) (2011).