FINAL COPY
309 Ga. 618

S20A0873.  ANDERSON v. THE STATE.

MELTON, Chief Justice.

Following a jury trial, Dexter Anderson appeals his convictions for the felony murder of his girlfriend, Charlotta Marie Lockhart, and possession of a firearm during the commission of a felony. Anderson contends, among other things, that the evidence was insufficient to support his conviction for felony murder, that he received an incomplete transcript of his trial proceedings, that trial counsel was constitutionally ineffective, and that the trial court erred by failing to charge the jury on the offense of possession of a firearm during the commission of a felony.[1] For the reasons set forth

---

[1] On April 30, 2013, Anderson was indicted for malice murder (Count 1), felony murder (Count 2), possession of a firearm during the commission of a felony (Count 3), and felony obstruction of a law enforcement officer (Count 4). Count 4 was nolle prossed at the start of trial, which was held from June 26 through June 28, 2017. The jury found Anderson guilty of felony murder and firearm possession, but acquitted him of malice murder. The trial court sentenced Anderson to life imprisonment for felony murder and five years consecutive to serve for firearm possession. Anderson filed a motion for new trial on July 21, 2017, and amended it on October 31, 2017. On January 10, 2018, Anderson filed a second amended motion for new trial arguing that the

below, we affirm.

1. Viewed in the light most favorable to the verdicts, the evidence presented at trial showed that Anderson and Lockhart, who was nicknamed "Nook," had a history of relationship difficulties. Lockhart's cousin, Niecey Langston, testified that, approximately a month before Lockhart was shot, Lockhart came to Langston's home to have her hair styled. After Lockhart was dropped off by Anderson, Lockhart told Langston she could not have her hair done at Langston's home because a number of male friends were visiting Langston's boyfriend there. Testimony indicated that Lockhart's concern was due to Anderson's jealousy. Langston and Lockhart then went to another friend's home. While there, Anderson

---

transcript was incomplete, and he amended his motion again on May 16, 2018. On May 21, 2018, a hearing was held to recreate the missing portion of the trial transcript. On May 31, 2018, the trial court issued an order finding that the trial transcript was properly recreated and ordering that the testimony of two witnesses at the hearing be transcribed and made part of the record. The trial court further ordered that Anderson could amend his motion for new trial to raise additional issues. Anderson filed two more amended motions for new trial on December 14 and December 17, 2018. Following a hearing on December 17, 2018, the trial court issued an order on December 10, 2019, denying Anderson's motion for new trial. Anderson thereafter timely filed a notice of appeal, and his case, submitted for decision on the briefs, was assigned to the April 2020 term of this Court.

called Lockhart, and, in response to this call, Langston drove Lockhart to meet Anderson at a nearby gas station where Anderson was waiting. When the women arrived, Anderson was upset and holding a gun. Anderson was angry that Lockhart had not kept him informed as to her whereabouts.

Lockhart's best friend, Gabrielle Anthony, testified that, on one earlier occasion, Lockhart contacted Anthony in the middle of the night to pick her up after she had a fight with Anderson. When Anthony arrived at Lockhart's neighbor's home (where Lockhart initially fled), Lockhart ran to Anthony's car wearing no shoes and only a nightgown. Anthony noticed that Lockhart had bruises on her thighs when she got into her car. Anthony further testified that she saw Lockhart in February 2013, approximately a month before Lockhart's death. On that day, Lockhart had again asked Anthony to pick her up after she and Anderson fought. On that occasion, Anderson followed the women to Anthony's home and attempted to kick down the front door while yelling at Lockhart to come outside. Anthony called the police, and Anderson left, but he then returned

later and again yelled for Lockhart to come outside. Anderson also threatened Lockhart, stating: "B***h, I'll kill you." Anthony further testified that, during this incident, Lockhart was crying and scared of Anderson, and that Anderson "always" told Lockhart, "If I can't have you, can't nobody have you."

On March 16, 2013, the day of the shooting, Lockhart and Anderson attended Lockhart's great-grandmother's birthday party. During the party, Anderson wanted Lockhart to leave with him, but she resisted. Lockhart's aunt, Mary Jane Hilton, saw Anderson and Lockhart arguing in a vehicle. During the argument, Anderson was "playing" with a firearm. Anderson and Lockhart left the party around 7:45 p.m.

Later, while the party was continuing, Lockhart's grandmother, Corrine Simpkins, received a phone call from Anderson, who said, "I'm sorry. I killed Nook[.] I'm so sorry." Simpkins, overwhelmed by the call, handed the phone to her daughter, Lashonda Davis. Anderson then told Davis, "Nook's gone, she's dead[.] I killed her. I mean, she shot herself." Anderson was

shouting and screaming into the phone. Davis then passed the phone to another relative, Ricky Jordan. Anderson told Jordan, "This is Dex," and he explained that Lockhart had been shot because they had been "playing."

When police arrived at Anderson's home, Anderson was "upset, ranting and raving inside the house." Lockhart had been shot in the back of her head, and her body was slumped over on the couch. Anderson was punching the walls, throwing items around, and breaking windows. He repeatedly grabbed Lockhart and cried, "I'm sorry. I'm sorry. I trust you. I trust you." Police recovered a Bersa .40-caliber handgun from the kitchen counter, which was later determined to be the weapon used to shoot Lockhart. Hilton also identified this weapon as the one with which she saw Anderson playing during his argument with Lockhart at the birthday party.

The medical examiner, Dr. Daniel Brown, determined that the cause of death was a gunshot wound located on the back of the left side of Lockhart's head, just above her ear. Dr. Brown further testified that this injury was not a contact wound, but, instead, the

weapon causing the injury had been fired from a distance. He also opined that this gunshot was not a typical suicide gunshot wound, and that the manner of death was homicide.

This evidence was sufficient to enable the jury to find Anderson guilty beyond a reasonable doubt of the crimes for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).[2]

2. Anderson contends that the trial court should have granted him a new trial because the State failed to provide him with a complete transcript. We disagree.

The record shows that, due to the "corruption" of a recording, the trial testimony of two witnesses, Davis and Jordan, could not be transcribed. For this reason, the trial court held a reconstruction

---

[2] Anderson does not argue on appeal that the evidence was insufficient to support his conviction for possession of a firearm during the commission of a felony. In accordance with our customary practice in murder cases, we have nonetheless considered the evidence supporting both of Anderson's convictions. We remind litigants, however, that the Court will end its practice of considering sufficiency sua sponte in non-death penalty cases with cases docketed to the term of court that begins in December 2020. See *Davenport v. State*, ___ Ga. ___ (___ SE2d ___) (2020). The Court began assigning cases to the December Term on August 3, 2020.

hearing pursuant to OCGA § 5-6-41, which provides, in relevant part:

> (f) Where any party contends that the transcript or record does not truly or fully disclose what transpired in the trial court and the parties are unable to agree thereon, the trial court shall set the matter down for a hearing with notice to both parties and resolve the difference so as to make the record conform to the truth. . . .
>
> (g) Where a trial is not reported as referred to in subsections (b) and (c) of this Code section or where for any other reason the transcript of the proceedings is not obtainable and a transcript of evidence and proceedings is prepared from recollection, the agreement of the parties thereto or their counsel, entered thereon, shall entitle such transcript to be filed as a part of the record in the same manner and with the same binding effect as a transcript filed by the court reporter as referred to in subsection (e) of this Code section. In case of the inability of the parties to agree as to the correctness of such transcript, the decision of the trial judge thereon shall be final and not subject to review; and, if the trial judge is unable to recall what transpired, the judge shall enter an order stating that fact.

As noted in OCGA § 5-6-41 (g), the correctness of a recreated transcript, as determined by the trial court, is final and not subject to review. See *Bamberg v. State*, 308 Ga. 340, 347 (2) (839 SE2d 640) (2020). But whether the transcript is *complete* pursuant to OCGA § 5-6-41 (f) is reviewable on appeal. See *Johnson v. State*, 302 Ga. 188,

194 (3) (b) (805 SE2d 890 (2017) ("An appellant is entitled to a complete and correct transcript, one that discloses what transpired in the trial court not only truly but fully." (citations and punctuation omitted)). "Complete," however, is not synonymous with "verbatim." *Bamberg*, supra, 308 Ga. at 349-350 (2). See also OCGA § 5-6-41 (d) ("where the trial is not reported or the transcript of the proceedings for any other reason is not available and the evidence is prepared from recollection, it may be prepared in narrative form"). A narrative transcript, though, "must be sufficiently detailed to allow the defendant to identify alleged errors and to allow meaningful appellate review." *Johnson*, supra, 302 Ga. at 194 (3) (b).

In this case, Anderson received a complete transcript after reconstruction, and the narrative parts which were recreated were sufficiently detailed for meaningful review. Both prosecutors who tried the case testified at the reconstruction hearing,[3] and their versions of what transpired at trial, which included recollections both helpful and detrimental to the State's case, were largely

---

[3] Though Anderson's trial counsel was called, he testified that he had no memory of any testimony from Davis or Jordan.

identical. The trial court acknowledged the accuracy of the prosecutors' accounts of Davis's and Jordan's testimony, stating that "the Court remembers it exactly as the State stated it, except I disagree, I think, on one or two issues," explaining that, in the trial court's recollection, Jordan was "a nominal-type witness," who "didn't want to be here." Under these circumstances, Anderson was not entitled to a new trial. See, e.g., *Mosley v. State*, 300 Ga. 521, 524-526 (2) (796 SE2d 684) (2017) (concluding that Mosley was not entitled to a new trial when the State re-created the transcript of one missing day of trial based on a hearing at which three of the four witnesses called that day testified along with Mosley's trial counsel and the prosecutor).[4]

Moreover, once the State provided testimony regarding what transpired at trial, Anderson was required to provide evidence to support his argument that the record remained incomplete. He failed to do so. See *Bamberg*, supra, 308 Ga. at 349-350 (2). And Anderson's contention that the record could not possibly be

---

[4] In this case, for comparison, only the testimony of two witnesses over the course of a three-day trial required reconstruction.

recreated because trial counsel should not be expected to assist appellate counsel since "trial counsel cannot be made to assert his own ineffectiveness" is incorrect. Trial counsel would have been aiding in the reconstruction of the transcript, not using the transcript to demonstrate any ineffectiveness. See *Bamberg*, supra, 308 Ga. at 350 (2) n. 9. And, in any event, trial counsel did testify at the reconstruction hearing, though he testified that he could not remember anything about the testimony at issue.

3. Anderson contends that the trial court erred by failing to instruct the jury on the elements of possession of a firearm during the commission of a felony, and, as a result, his conviction for that crime must be reversed. We disagree, as Anderson has not shown plain error.

It is undisputed, and evident as a matter of record, that the trial court, in its final instructions to the jury, did not give a separate charge on the elements of possession of a firearm during the commission of a felony, even though the trial court stated during the

charge conference that it would give that instruction.[5] Anderson, however, did not request the charge in writing and made no objections to the instructions ultimately given to the jury. As such, his contention relating to the failure of the trial court to give the charge in this instance is reviewed only for plain error.[6]

> The test for plain error is comprised of four prongs:

> First, there must be an error or defect — some sort of deviation from a legal rule — that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the trial court proceedings. Fourth and finally, if the above three prongs are satisfied, the appellate court has the discretion to remedy the error — discretion which ought to be exercised only if the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.

---

[5] The State filed a written request that the charge be given.

[6] OCGA § 17-8-58 (a) provides in relevant part that "[a]ny party who objects to any portion of the charge to the jury or the failure to charge the jury shall inform the court of the specific objection and the grounds for such objection before the jury retires to deliberate." OCGA § 17-8-58 (b) further provides that a failure to object as specified in subsection (a) "preclude[s] appellate review of such portion of the jury charge, unless such portion of the jury charge constitutes plain error which affects substantial rights of the parties."

(Citation, punctuation and emphasis omitted.) *State v. Kelly*, 290 Ga. 29, 33 (2) (a) (718 SE2d 232) (2011).

Anderson did not affirmatively waive this issue at trial, so the first prong is met. The second prong is met as well. As all of the parties agree, the omission from the jury instructions of a charge on the offense of possession of a firearm during the commission of a felony, for which the defendant was being tried, is a clear and obvious error. A "trial judge must charge the jury on each crime specified in the indictment unless the evidence does not warrant a conviction of such crime, or unless the State has affirmatively withdrawn a crime or stricken it from the indictment." (Citation and punctuation omitted.) *Chase v. State*, 277 Ga. 636, 639 (2) (592 SE2d 656) (2004).

Regarding the third plain error requirement, however, the omission from the jury charge was ultimately harmless and, as such, did not affect Anderson's substantial rights under the circumstances

present in this case.[7] While the trial court failed to give a separate

charge on possession of a firearm, it did read the indictment to the

jury, which provides that Anderson was charged

> with the offense of POSSESSION OF A FIREARM
> DURING THE COMMISSION OF A CRIME (§ 16-11-
> 106) for that the said accused, in the County of Burke and
> State of Georgia, on the 16th day of March, 2013, did have
> on his person a firearm, to-wit: a Bersa .40 caliber
> firearm, during the commission [of] a crime, to-wit:
> Murder, said crime involving the person of Charlotta
> Marie Lockhart, and which crime was a felony.

In addition, the indictment was sent out with the jury for use during

deliberations, and the jury was instructed that the State was

required "to prove every material allegation of the indictment and

every essential element of the crime charged beyond a reasonable

---

[7] In *McGruder v. State*, 213 Ga. 259, 261-262 (2) (98 SE2d 564) (1957), this Court left open the question of whether the omission of elements from an instruction might be harmless based on the reading of an indictment to a jury. Since then, the United States Supreme Court has explained:

> An instruction that omits an element of the offense differs
> markedly from the constitutional violations this Court has found
> to defy harmless-error review, for it does not necessarily render a
> trial fundamentally unfair or an unreliable vehicle for determining
> guilt or innocence. Omitting an element can easily be analogized
> to improperly instructing the jury on the element, an error that is
> subject to harmless-error analysis.

(Emphasis omitted.) *Neder v. United States*, 527 U. S. 1, 2 (1) (a) (119 SCt 1827, 144 LE2d 35) (1999).

doubt." Thus, the jury was provided with the elements of the crime for which Anderson had been indicted, and, it is evident that the jury considered these elements. By finding Anderson guilty of the felony murder of Lockhart,[8] the jury determined that Anderson, while in possession of a Bersa firearm, shot and killed Lockhart.[9] In doing so, the jury necessarily found that the essential elements of possession of a firearm during the commission of that felony had been satisfied. Under these circumstances, Anderson cannot satisfy the third prong of the plain error test because he has not demonstrated that the failure to give a separate jury charge on possession of a firearm during the commission of a crime affected his trial court proceedings. As such, Anderson's conviction stands.

4. Anderson maintains that the trial court erred when it denied his motion for a mistrial after the State allegedly failed to produce a coroner's report relied on by the GBI medical examiner, Dr. Brown.

---

[8] The trial court did charge the jury on the crime of felony murder as well as the predicate crime of aggravated assault during its final instructions.

[9] With regard to the charge of felony murder, Anderson's indictment states that Anderson "did[,] while in the commission of the felony of Aggravated Assault, cause the death of Charlotta Marie Lockhart, a human being, by shooting her with a Bersa .40 caliber handgun, a deadly weapon."

We disagree.

The record shows that, during trial and prior to Dr. Brown's testimony, Anderson complained that the State had not provided him with a "coroner's report" referenced within Dr. Brown's autopsy report. The prosecutor had already provided Anderson with the "transport documents" from the coroner that accompanied Lockhart's body upon arrival at the GBI, which is what the defense requested in discovery.[10] Anderson had not requested the coroner's report.

Anderson moved for a mistrial, arguing that he was entitled to the discovery of all materials upon which Dr. Brown had relied.[11] The trial court denied the motion on two bases: because Anderson had made no request for a pretrial hearing to resolve the matter, and because information regarding the coroner's report and its contents could be brought out during the cross-examination of Dr.

---

[10] Transport documents accompany the body of the deceased and include limited information identifying the deceased individual.

[11] We note that Anderson made no allegations of any bad faith on the part of the State with regard to his failure to receive a written coroner's report, if such a written report existed (which has never been established).

Brown.

During that cross-examination, Dr. Brown explained that he did not have a document from the coroner which he could provide:

> ANDERSON: So, as we sit here today, you testify some four years after you've done this, we don't know what that report said, do we?
> DR. BROWN: I don't have access to that report right now.
> ANDERSON: Is that an oral report, or is it a report that is given to someone in your office and then typed up and provided to you?
> DR. BROWN: Could be both. It could be if a coroner comes to an autopsy, it can be verbal. But the way it's reported to us at GBI, is they call the office, they talk to one of the investigators, and the investigator asks them a series of questions about what they're reporting. So, they report and that goes into a GBI investigative report, which since our office is closed is now archived up at headquarters outside of Atlanta.
> ANDERSON: Given the way you have included that in the opinion portion of your autopsy, it is fair to say that that information entered into your opinion?
> DR. BROWN: Yes. Those are records that are part of open records and you can request to get those records and have those reports. I've never been asked to bring a report with me on the investigation, so I don't have one.

"Whether to declare a mistrial is a question committed to the discretion of the trial judge, and the denial of a mistrial is reversible error only if it appears that a mistrial was essential to preserve the

defendant's right to a fair trial." (Citation and punctuation omitted.) *Coleman v. State,* 301 Ga. 720, 722 (3) (804 SE2d 24) (2017). Where there was nothing tangible for the State to produce during discovery, there "[is] no discovery violation that would warrant any sanction, including a mistrial." *Lewis v. State*, 293 Ga. 110, 114 (2) (b) (744 SE2d 21) (2013).

Based on the record on appeal, Anderson has not proven that there was a tangible report for the State to produce. At the motion for new trial hearing, Anderson admitted that he had never seen a copy of the alleged report and did not know for certain whether or not a written report even existed. There was also no indication that he ever attempted to obtain any report, and Anderson proffered no evidence of what the report might contain, if it even existed.[12] As such, Anderson has not provided any support for his assertion that the trial court abused its discretion by denying his motion for a mistrial. *Lewis*, supra, 293 Ga. at 114 (2) (b).

---

[12] At the hearing on Anderson's motion for new trial, the prosecutor testified that the State never had any written coroner's report in its possession and that she first became aware of Anderson's contentions regarding the matter during trial.

5. Anderson argues that his trial counsel rendered constitutionally ineffective assistance by failing to: (a) object to the prosecutor's allegedly improper "prejudgment" questions during voir dire; (b) adequately question during voir dire a POST-certified juror about his possible bias; and (c) object to certain hearsay statements regarding relationship difficulties between Anderson and Lockhart. We disagree.

> To prevail on [his claims] of ineffective assistance, [Anderson] must prove that his lawyer performed deficiently at trial and that he was prejudiced by this deficient performance. See *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984). To prove deficient performance, [Anderson] must show that defense counsel performed his duties at trial in an objectively unreasonable way, considering all the circumstances and in the light of prevailing professional norms. Id. at 687-688 (III) (A). See also *Kimmelman v. Morrison*, 477 U. S. 365, 381 (II) (C) (106 SCt 2574, 91 LE2d 305) (1986). And to prove that he was prejudiced by this deficient performance, [Anderson] must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U. S. at 694 (III) (B). This burden is a heavy one, see *Kimmelman*, 477 U.S. at 382 (II) (C), and we conclude that [Anderson] has failed to carry it.

*Wofford v. State*, 305 Ga. 694, 696 (2) (827 SE2d 652) (2019).

(a) Anderson first contends that trial counsel provided constitutionally ineffective assistance when he failed to object to voir dire questions posed by the State. Specifically, Anderson argues that the State's questions improperly called for the prejudgment of his case. See *Sallie v. State*, 276 Ga. 506, 510 (3) (578 SE2d 444) (2003) ("Questions of a technical legal nature and questions that call for prejudgment are improper in a voir dire examination.").

The record shows that the State generally described the case to a panel of potential jurors in order to determine if they had prior knowledge of the matter. The State explained to the potential jurors:

> The case that we're trying today, the events took place on March 16th of 2013. So, basically, the defendant had been dating Lockhart, whose name is Charlotta Lockhart. She goes — she went by Nook, as well, for a few years. On that day they'd gone to a party in Wrens, and when they got back he shot her and she did die. So, this happened on Martin Luther King, Jr. Road in Keysville, near the Keysville Store. Does anyone think that these facts sound familiar?

Anderson argues that this statement called for prejudgment of his case.

[G]enerally speaking, prejudgment questions — questions that require a prospective juror to assume facts that are yet to be proved and to prejudge the case based on those assumed facts — are inappropriate. See *Bryant v. State*, 288 Ga. 876, 880 (4) (a) (708 SE2d 362) (2011) ("Questions . . . that call for prejudgment are improper in a voir dire examination.") (citation omitted). We have acknowledged, however, that "there is often a fine line between asking potential jurors how they would decide the case and questions that merely seek to expose bias or prejudice." *Sallie*[, supra, 276 Ga. at 510 (3)]. Accordingly, "[t]he scope of voir dire and the propriety of particular questions are left to the sound discretion of the trial court." *Howard v. State*, 286 Ga. 222, 229 (5) (686 SE2d 764) (2009) (citation omitted).

*Ellis v. State*, 292 Ga. 276, 280-281 (2) (736 SE2d 412) (2013).

This Court has previously held that it is not inherently improper when a prosecutor asks prospective jurors "if any of them ha[ve] heard about the murder that occurred on [the incident date]," "as [the question is] meant to determine if any of the prospective jurors had prior knowledge of the case that might require their removal." *Herrington v. State*, 300 Ga. 149, 153 (3) (794 SE2d 145) (2016).[13] Accordingly, Anderson has failed to show that trial counsel

---

[13] This, of course, should be contrasted from a situation in which a prosecutor provides the details of a case and then improperly asks if a juror could impose punishment in those circumstances. Questions of this type seek

performed deficiently by failing to object to the State's voir dire, as the trial court would not have abused its discretion by denying an objection to the voir dire question, even if Anderson had made one.

(b) Anderson contends that trial counsel was ineffective for failing to adequately question Juror 13, a retired police officer, about any possible bias he may have had against the defense. Anderson premises this contention on speculation that Juror 13 could have harbored such bias due to his former career in law enforcement.[14]

---

prejudgment, not merely information regarding the possibility of juror bias due to prior knowledge of the case. See, e.g., *Nance v. State*, 280 Ga. 125, 127-128 (6) (623 SE2d 470) (2005) (holding that a question "that listed the specific circumstances of [the defendant's] case and then inquired of the prospective juror whether she could vote for a life sentence under those circumstances" improperly sought a "prejudgment"); *Sallie*, supra, 276 Ga. at 509-510 (3) (a prejudgment question that was properly denied in a death penalty case was: "In reaching the ultimate decision are you going to be able to factor in matters like . . . (the defendant's) age; what the guy's done in the last 10 years since the offense; what the guy's military record was like; has he shown indication that the conduct at issue that led to the criminal charges was out of context[.] . . . Would any of those matters, could you take them into account in the sentencing decision(?)").

[14] Georgia has held that actively serving full-time police officers with arrest powers must be excused upon request in a criminal trial. See *Butts v. State*, 273 Ga. 760, 764 (5) (546 SE2d 472) (2001). See also *Hutcheson v. State*, 246 Ga. 13, 14 (1) (268 SE2d 643) (1980) (if actively serving full-time police officers are challenged for cause in a criminal case, the request must be granted). Jurors who are not currently serving as full time police officers, however, are not precluded from serving on juries. See *Denison v. State*, 258 Ga. 690, 692 (4) (373 SE2d 503) (1988) (sworn part-time deputy for the Liberty

But Anderson did not call Juror 13 to testify at his motion for new trial hearing, and, as a result, he has presented no actual evidence that Juror 13 either harbored any bias at all or that Anderson was harmed in any other way by Juror 13's participation in his trial.[15] So, under *Strickland*, supra, Anderson has wholly failed to support his contention that trial counsel was ineffective in his handling of Juror 13.

(c) Finally, Anderson contends that trial counsel was constitutionally ineffective for failing to object to certain alleged hearsay statements during the testimony of Langston and Anthony regarding his rocky relationship with Lockhart. We disagree.

The statements identified by Anderson relate to Anderson's controlling nature and the jealousy he displayed toward Lockhart. With regard to Langston, Anderson takes issue with her testimony that Lockhart said the following: (1) Anderson did not want

County Sheriff's Office not precluded from serving on a jury).

[15] Anderson's questioning of Juror 13 at trial also failed to show any bias held by that juror.

Lockhart to be around other males;[16] and (2) while Anthony was styling Lockhart's hair, "her phone rung. She got to arguing about where . . . she was. She wasn't in the place she got dropped off at, so we tried to rush to leave." With regard to Anthony, Anderson complains that she should have not been allowed to testify that, on the occasion when Lockhart called Anthony to pick her up in the middle of the night, Lockhart had indicated that she needed Anthony to come get her because she got into an altercation with Anderson.

Anderson contends only that the "collective" effect of these alleged hearsay statements harmed him. Even if we assume that the statements identified by Anderson were objectionable as hearsay and that trial counsel somehow performed deficiently with regard to the statements, Anderson has not proven prejudice under *Strickland*. All of the alleged hearsay statements were cumulative of other admissible evidence, including additional testimony by

---

[16] Trial counsel did object to this testimony, and the objection was sustained. Anderson nonetheless complains that trial counsel failed to request a curative instruction.

Langston and Anthony, describing Anderson as an abusive and jealous boyfriend. See *Haney v. State*, 305 Ga. 785, 790 (2) (827 SE2d 843) (2019) ("The failure of trial counsel to object to . . . cumulative evidence does not support a claim of ineffective assistance of counsel.") (citation and punctuation omitted).[17] Therefore, the trial court did not err by rejecting Anderson's claims of ineffective assistance.

*Judgment affirmed. All the Justices concur.*

---

[17] For example, the following testimony about Anderson's relationship with Lockhart was elicited at trial: (1) Langston testified that Anderson told her that Lockhart lied all the time about her location; (2) Anthony testified that Anderson attempted to kick down the door of her home while threatening Lockhart; (3) Simpkins testified that Anderson did not like Lockhart to look at other men; (4) Hilton witnessed Anderson arguing with Lockhart about leaving the birthday party while playing with a gun; and (5) at the scene, Anderson was witnessed grabbing Lockhart's body while saying, "I trust you." All of this unchallenged evidence is indicative of Anderson and Lockhart's relationship difficulties.

DECIDED AUGUST 24, 2020.

Murder. Burke Superior Court. Before Judge Blanchard.

*Isabella K. Levy, Katherine M. Mason*, for appellant.

*Ashley Wright, District Attorney, Joshua B. Smith, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Elizabeth Rosenwasser, Assistant Attorney General*, for appellee.