## 36242. WILSON v. THE STATE.

HILL, Justice.

On April 4, 1978, Shirley Ann Johnson, an employee of a Waycross Zippy Mart, was found at the entrance to the store. She had been stabbed over 50 times and died a few hours later. On July 3, 1978, according to Lonnie and Daisy Clark they were awakened by an intruder in their home. Lonnie Clark testified that he was attacked and knocked unconscious, and that when he came to, he called police from a house nearby. The police arrived and found the defendant, David Wilson, with his genitals exposed lying on top of Daisy Clark, who was nude. Wilson was indicted for the April 4 murder of Shirley Ann Johnson and for the July 3 rape of Daisy Clark, aggravated assault upon Lonnie Clark, and burglary of the Clark's residence. He was tried by a jury January 8 — 16, 1979, and found guilty on all four counts after a 7-day trial. He was sentenced to death for the murder.[1]

Wilson argues that his convictions must be reversed because he was denied, inter alia, due process and meaningful access to the courts by the trial court's employment of a court reporter who was incompetent in that his severe hearing disability rendered him incapable of transcribing the trial. After reviewing the trial transcript, the defendant moved for correction of errors and omissions in the transcript. At a July 6, 1979, hearing on the motion,

---

[1]No motion to sever the trial of the murder from the later offenses was made.

defendant's counsel stated that: "It pains me to have to bring this motion. I have a high regard for [the court reporter] personally. But, the fact is, is that [he] suffers from a severe hearing disability which renders him incapable of performing the job of a certified court reporter." The evidence shows that the court reporter had been a reporter for over 60 years, and that he had worn a hearing aid for the past 10 or 15 years. During this July 6 hearing, the tapes of the trial were played and defendant's attorney pointed out errors and omissions in the transcript. The hearing was continued to July 7, at which time the court stated that although the defendant had requested that another court reporter retranscribe the tapes, the court's reporter wanted another opportunity to correct the transcript himself.

At a hearing on October 4, 1979, defendant stated that although "several hundred" pages had been corrected the transcript was still not satisfactory, and renewed his motion for a true and correct transcript.[2] Counsel again pointed out that it was extremely time-consuming for him to check the transcript against the tapes. He stated that he had compiled a list of no less than 205 errors in the corrected transcript. He also noted that at the first hearing, the court reporter gave him 11 nonrepetitive tapes of the trial. In conjunction with this hearing, he had again given him 11 tapes, but 2 were duplicates of others and 1 was a tape of an unrelated civil case. Defendant's counsel went on to point out that the reporter had served the court well for years, but his severe hearing disability must have been apparent to the court. After defendant's counsel had pointed out several errors and omissions in the "corrected" transcript, the court again denied defendant's motion to appoint a new court reporter to transcribe the tapes.[3] The trial court then instructed defendant's counsel to take the tapes and make a complete list of alleged errors and omissions, to seek stipulations to the corrections from the state, and to advise the court as to any points as to which the parties could not agree. Defendant's motion for funds to hire a court reporter to reconstitute the record was overruled. Defendant's motion that copies of the tapes be made so that the originals could be introduced into evidence also was overruled.

At a December 5 hearing, the defendant's attorney stated that

---

[2]The corrected pages numbered approximately 630 out of a total of 1400-1500. The original pages have been made a part of the record on appeal.

[3]At this point, reference is made to 34 tapes. It is not clear why the number increased from 11 to 34, but the discrepancy may be accounted for by duplicates in that the reporter used as many as four different tape recorders at one time.

21 of the 34 tapes were missing. He stated in his place that they had been kept in a locked cabinet but the key was kept in his desk drawer so that they could have been, and he believed they had been, stolen during a burglary at his office. He pointed out, however, that his offices had been rearranged in his absence and it was possible that the tapes were misplaced during the moving process. He had available the list locating 205 errors which he had previously prepared, but the district attorney responded that in some instances the list merely located the alleged omissions without specifying what was omitted and without the tapes he was unable to stipulate corrections.[4]

At the next hearing, on December 27, 1979, the district attorney stipulated to making some corrections and additions to the corrected transcript but was unable to stipulate as to others without the tapes. The corrections agreed to have not been made in the transcript filed in this court. (It was announced at this hearing that the court reporter had resigned.)

At a hearing on January 14, 1980, the court reporter testified that he had worked in the trial judge's court approximately 15 years, that he had worn a hearing aid for the past 10 or 15 years, and that his hearing disability had gradually gotten worse. He stated that although he normally wore his hearing aid, he did not wear one in court during this trial and he had not worn one when he made the original transcript of the trial. He did, however, use his hearing aid to make the corrections.[5] He also stated that he had used 4 tape recorders and that gaps in the original transcript occurred because he had worked from tapes made by the recorder connected to the public address system and that recorder had accidentally been turned off. He acknowledged that several bench conferences had not been transcribed but said they were not material.[6] Finally, he explained that he had brought in another court reporter to take down and transcribe the voir dire because he had trouble hearing some jurors. Although he had certified the original transcript, upon checking the voir dire after defendant moved to correct it, he found it necessary to correct one out of every 2 or 3 pages of the voir dire, and to add 35 minutes relating to post voir dire motions which had been omitted.[7]

---

[4]Thus it appears that the 13 tapes remaining are not a complete recording of the trial.

[5]The court reporter's use of his hearing aid to correct 630 pages indicates that it should have been used to make the original transcript.

[6]Under the recently adopted rules of procedure for Unified Appeal effective August 25, 1980, all bench conferences are to be recorded and transcribed. Rule IV A 4.

[7]Recordation of the Witherspoon voir dire is required in those cases in which the

A transcript which has been certified as true, complete and correct by the court reporter is presumed so. Code Ann. § 24-3105; *Ross v. State,* 245 Ga. 173 (4) (263 SE2d 913) (1980). In this case, that presumption was overcome as to the original transcript, as reflected by the trial court's referring the transcript back to the court reporter in order that the transcript could be corrected and by the court reporter's correction of over a third of the 1400-1500 page transcript. Those corrections show that the inaccuracies which plagued the original transcript were caused, directly or indirectly, by the reporter's hearing disability. Prior to the loss of the tapes, the defendant had shown that the corrected transcript suffered from the same problem although the number of errors had been reduced. The district attorney agreed to many corrections to the corrected transcript (which have not been made), but was unable to agree to others. Hence the recertified corrected transcript is not entitled to the presumption of correctness. The defendant having satisfactorily shown that due to the reporter's hearing disability, the corrected transcript was not true, complete and correct, the trial court erred in not granting the motions to have another court reporter transcribe the tapes.

We note that the trial court did not, indeed could not in this case, "resolve the difference so as to make the record conform to the truth" as provided by Code Ann. § 6-805 (f), but rather ruled that the burden was on the defendant to listen to the tapes and compile a list of alleged errors and omissions and seek to have corrections stipulated. We do not approve the practice of releasing the tapes of a trial to either party. Requiring the defendant to rework the transcript of a 7-day trial contravenes our statutes relating to the preparation of transcripts. Code Ann. § 27-2401 provides that "On the trial of all felonies the presiding judge shall have the testimony taken down, and, when directed by the judge, the court reporter shall exactly and truly record . . . the testimony and proceedings in the case. . . ." Code Ann. § 24-3105 provides that "It shall be the duty of all court reporters to transcribe the evidence and other proceedings, of which he has taken notes as provided by law. . . ."[8] Consonant with this statutory scheme, we hold that where the defendant shows that the

_____

state seeks the death penalty. *Owens v. State,* 233 Ga. 869 (2) (214 SE2d 173) (1975); *State v. Graham,* 246 Ga. 341 (1980). See also Unified Appeal Rule IV A 4, supra n. 6.

    [8]We note also that, as defendant has asserted, in view of this court's responsibility in the appellate review of cases in which the death penalty was imposed, an accurate and complete transcript is essential. Code Ann. § 27-2537; *Owens v. State,* supra. See also Unified Appeal Rule IV A 4, supra n. 6.

court reporter appointed by the trial court is incapable of transcribing the tapes of a felony trial, another court reporter should be appointed. Under the circumstances of this case, the burden of preparing the transcript should not have been placed on the defendant.

The state argues that the defendant has failed to show that the errors in the transcript were material and thus harmful and hence his convictions and death sentence should be reviewed on the transcript before us. Where the transcript itself shows that error was harmless, it may be so declared, but here the omissions in the transcript preclude us from finding that they were immaterial and harmless. See *Montos v. State,* 212 Ga. 764 (3 at 766) (95 SE2d 792) (1956); *Poultryland, Inc. v. Anderson,* 200 Ga. 549, 562 (37 SE2d 785) (1946); *State v. Hightower,* 236 Ga. 58, 61 (222 SE2d 333) (1976).

A person convicted of a crime has a right to appeal. Such an appellant has a right to a transcript of the trial for use on appeal. See Griffin v. Illinois, 351 U. S. 12 (76 SC 585, 100 LE 891) (1956). Such transcript is to be true, complete and correct. It is true that in this case appellant's counsel was responsible for custody of the tapes and that they were lost while in his custody. The evidence is undisputed, however, that the tapes were entrusted to appellant's counsel because the transcript prepared by the court reporter was not correct, that the court overruled appellant's motions to appoint another court reporter or to have copies of the tapes made, and that the tapes were lost as a result of acts of someone other than appellant's counsel.

In the ordinary case, the remedy would be to order a new transcription now. But that is, of course, impossible because a complete recording of the trial no longer exists. Because the erroneous ruling refusing to appoint an able court reporter preceded and led to the release and loss of the tapes, and in view of the fact that defendant unsuccessfully moved that the tapes be reproduced to insure the safekeeping of the originals before he removed them, we find that under the circumstances of this case the defendant is entitled to a new trial. See *Wade v. State,* 231 Ga. 131 (1) (200 SE2d 271) (1973).

*Judgment reversed. All the Justices concur, except Jordan, P. J., who concurs in the judgment only.*

ARGUED JUNE 2, 1980 — DECIDED
NOVEMBER 14, 1980.

*August F. Siemon, Derek H. Jones,* for appellant.
*Dewey Hayes, District Attorney, M. C. Pritchard, Assistant*

*District Attorney, Arthur K. Bolton, Attorney General, Nicholas G. Dumich, Staff Assistant Attorney General,* for appellee.