S16A1291. SHEARD v. THE STATE.
(793 SE2d 386)

HUNSTEIN, Justice.

Appellant Elliot Sheard was convicted of murder and associated crimes in connection with the stabbing death of Charles Elder. Sheard now appeals, arguing, as he did in his motion for new trial, that missing portions of his trial transcript render his appeal meaningless.[1] In light of a number of factors complicating the absence of

---

[1] In May 1998, a Fulton County grand jury indicted Sheard — along with two co-defendants — on the charges of murder, felony murder predicated on aggravated assault, felony murder predicated on armed robbery, felony murder predicated on burglary, aggravated assault, armed robbery, and burglary. Following a joint trial conducted in late August and early September 1998, a jury acquitted Sheard of murder but found him guilty of all other offenses. After merging the felony murder and aggravated assault verdicts, the trial court sentenced Sheard to life imprisonment for felony murder predicated on aggravated assault and to consecutive terms of 20 years' imprisonment for armed robbery and burglary, for a total sentence of life plus 40 years. In October 1998, Sheard filed a motion for new trial, which he amended in November 2011 and then again in February 2013. Following numerous hearings from November 2011 – August 2013, the trial court denied Sheard's amended motion for new trial on March 14, 2014.

portions of the trial transcript, we agree that Sheard is entitled to a new trial and reverse the judgment of the trial court.

Viewed in a light most favorable to the verdicts, the evidence adduced at trial — which was conducted in September and October 1998 — established as follows. The victim, Charles Elder, was known to run a successful cash-only bootlegging operation out of his apartment and, as a consequence, maintained a large amount of money in his home. Elder, himself an alcoholic, was prone to brag and display his cash, which was kept in brown paper sacks throughout his apartment. Sheard, along with his co-defendants, Dorothy Grier and Craig Sheard,[2] were familiar with both Elder's neighborhood and his bootlegging operation, and the three defendants were known to ride around the neighborhood in Grier's white BMW. In the months leading up to Elder's murder, witnesses overheard the co-defendants discussing the idea of robbing Elder and using his money to "get out of town."

On the night of the murder, witness Herbert Burroughs was in the apartment complex visiting his girlfriend and observed the three defendants arrive at Elder's residence in Grier's white sedan. Burroughs observed Sheard and co-defendant Craig Sheard exit the vehicle and enter Elder's residence; Grier drove away, and Burroughs returned to his girlfriend's apartment. Suspecting that something might happen, Burroughs returned to Elder's residence, at which point he observed Craig Sheard "jump" on Elder and stab him in the neck; Burroughs also observed that a light was turned on in Elder's bedroom, heard something fall in the apartment, and then watched the two men exit the apartment with a beige bag and run in the direction in which Grier had driven. According to Burroughs, Craig Sheard was covered in blood and threw a knife in an adjacent yard. A witness described hearing sounds of a "fight" coming from Elder's apartment on the evening of the murder, and an individual matching Sheard's description was seen traveling by foot in the area around the time of the murder.

Days later, Elder was discovered dead with multiple stab wounds and blunt-force traumas; he had been dead between three and seven days. Elder suffered wounds around his face and neck area, one severing his jugular vein. Elder's apartment appeared to have been searched, and cash and valuables were missing. Police recovered two knives, one in an alley near Elder's apartment and a second in an

---

Sheard filed a notice of appeal on April 11, 2014, and an amended notice of appeal on June 4, 2015. This appeal was docketed to the April 2016 term of this Court and was thereafter submitted for a decision on the briefs.

[2] The jury acquitted Grier of all offenses and found Craig Sheard guilty of all offenses.

adjacent yard; the second knife was consistent with Elder's injuries. A later search of Grier's vehicle — which she was no longer seen driving — revealed reddish-brown staining on the rear seat covers, and seat insulation and floorboards appeared to have been saturated with water. Shortly after Elder's murder, Sheard fled to New York, where he was later apprehended. In his statement to police, Sheard acknowledged that he knew the victim but claimed that he left Atlanta with $19,000 to avoid a pending drug charge.

1. The evidence as summarized above was sufficient to enable a rational trier of fact to conclude beyond a reasonable doubt that Sheard was guilty of the crimes of which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979). Though Sheard contends that Burroughs was an accomplice and, thus, that his testimony required corroboration, see former OCGA § 24-4-8 (now OCGA § 24-14-8), there was evidence that Sheard was observed discussing plans to rob Elder, that someone matching Sheard's description was observed in the area at the time of the crime, that Sheard was in possession of a large amount of cash after the murder, and that Sheard had motive to rob Elder. Accordingly, additional evidence corroborated Burroughs's testimony and "justif[ied] an inference that [Sheard] is guilty." *Crawford v. State*, 294 Ga. 898, 900-901 (1) (757 SE2d 102) (2014). See also *Lindsey v. State*, 295 Ga. 343 (3) (760 SE2d 170) (2014).

2. Sheard also argues that he is entitled to a new trial because portions of his trial transcript are unavailable. We agree.

After Sheard's September 1998 conviction and sentence, trial counsel filed a timely motion for new trial, and Sheard was appointed appellate counsel. However, no action was taken on the motion until 2004, when new appellate counsel, William Rucker, was appointed and began researching the motion. Rucker discovered that portions of the trial transcript were missing, and, during the subsequent years, the State, trial court, and court reporter attempted to locate it. Though some portions were recovered, the entire transcript was never located. The transcript as it exists now fails to reflect the proceedings of a Saturday session, during which the jury heard closing arguments and the charge of the court before retiring to deliberate. In its May 2014 order denying Sheard's motion for new trial, the trial court found — based on its own recollection of the 1998 trial and its standard practice — that the closing arguments of the parties were unremarkable, that the transcript of the charge conference established that the jury was adequately and appropriately charged, that testimony recounting a number of questions from the jury was not credible and was, in fact, unlikely, and that it was

unlikely the jury was given an *Allen*[3] charge but, if one were to have been given, it would have been a pattern charge.

"A person convicted of a crime has a right to appeal. Such an appellant has a right to a transcript of the trial for use on appeal." *Wilson v. State*, 246 Ga. 672, 676 (273 SE2d 9) (1980) (citing *Griffin v. Illinois*, 351 U. S. 12 (76 SCt 585, 100 LE 891) (1956)). In all felony cases in this State, "the transcript of evidence and proceedings shall be reported and prepared by a court reporter," OCGA § 5-6-41 (a), and "it is the duty of the state to file the transcript after a guilty verdict has been returned in a felony case." *Wade v. State*, 231 Ga. 131, 133 (200 SE2d 271) (1973). A defendant is entitled to have that transcript accurately reflect his trial, see *Wilson*, 246 Ga. at 675, and courts in this State "have held that the failure of the state to file a correct transcript, through no fault of the appellant, effectively deprives the defendant of his right to appeal." *Montford v. State*, 164 Ga. App. 627, 629 (298 SE2d 319) (1982).

The mere fact that a portion of a transcript is missing does not automatically entitle a defendant to a new trial. "Such omissions 'cannot be reversible error absent an allegation of harm resulting from the deletion.' " (Citations omitted.) *Ruffin v. State*, 283 Ga. 87 (6) (656 SE2d 140) (2008) (transcript missing voir dire, opening statement, certain bench conferences, and polling of the jury did not warrant new trial); *Smith v. State*, 251 Ga. 229 (2) (304 SE2d 716) (1983) (skips in the record that did not prevent this Court from adequately reviewing the trial did not warrant new trial). However, where the missing transcript prevents adequate review of the trial below, a new trial is warranted. See, e.g., *Wade*, 231 Ga. at 133 (new trial warranted where transcript could not be filed due to the loss of stenographic notes); *Montford*, 164 Ga. App. at 628 (new trial warranted where transcript failed to capture opening and closing statements, voir dire, and "portions of the court's charge and other portions of the record"). Here, there are a number of extenuating circumstances that warrant a retrial.

First, and most obviously, the age of this appeal raises the specter of due process concerns, see *Glover v. State*, 291 Ga. 152 (3) (728 SE2d 221) (2012), and supports Sheard's argument for a new trial. Despite nearly two decades, the State has been unable to complete the transcript, during which time the court reporter responsible for the trial has died, Sheard has been appointed multiple attorneys for his appeal, and memories have undoubtedly faded. Though the trial court made findings concerning Sheard's trial, those findings were

---

[3] *Allen v. United States*, 164 U. S. 492 (9) (17 SCt 154, 41 LE 528) (1896).

reached more than 15 years after Sheard's trial and without the benefit of any trial notes (which, the trial court acknowledged, are also missing). Second, while certain portions of a trial, such as voir dire and opening statements, need not be transcribed in non-death cases,[4] the jury charge — which is missing here — is a crucial portion of trial in which jurors are instructed on the applicable law, on how to evaluate the evidence, and on how to deliberate and reach a verdict, and Sheard alleges harm as a result of the missing transcripts. *Ruffin*, 283 Ga. at 88. Third, and finally, we are concerned that forcing appellate counsel — who was not involved in the original trial — to divine error without the aid of a transcript is not only fruitless but also hinders counsel's ability to adequately and zealously represent Sheard on appeal. Cf. *United States v. Selva*, 559 F2d 1303 (II) (5th Cir. 1977).

Based on the foregoing, the missing portion of the transcript in this case warrants a new trial, and the trial court erred when it denied Sheard's motion for new trial. Accordingly, the judgment of the trial court is reversed.[5]

*Judgment reversed. All the Justices concur.*

DECIDED NOVEMBER 7, 2016.

*Matthew K. Winchester*, for appellant.

*Paul L. Howard, Jr.*, District Attorney, *Paige Reese Whitaker*, Assistant District Attorney; *Samuel S. Olens*, Attorney General, *Patricia B. Attaway Burton*, Deputy Attorney General, *Paula K. Smith*, Senior Assistant Attorney General, *Meghan H. Hill*, Assistant Attorney General, for appellee.

*Charles H. Frier*, amicus curiae.

---

[4] See *McFarlane v. State*, 291 Ga. 345 (2) (729 SE2d 349) (2012) (transcripts); *Norton v. State*, 293 Ga. 332 (7) (d) (745 SE2d 630) (2013) (opening statements).

[5] We do not reach the remaining issues raised by Sheard on appeal because it is unclear whether they may occur on retrial. We note that, because the evidence was sufficient to sustain the convictions, the State may, at its option, choose to retry Sheard on the offenses for which there was a guilty verdict. See, e.g., *State v. Caffee*, 291 Ga. 31 (2) (728 SE2d 171) (2012).