302 Ga. 188
FINAL COPY

S17A1105. JOHNSON v. THE STATE.

NAHMIAS, Justice.

After a six-day trial, a jury found Craig Johnson guilty of malice murder and other crimes related to the stabbing death of Nicole Judge. All of the original verbatim trial transcript materials were later destroyed in a fire at the court reporter's house. The State ultimately provided Johnson with a 14-page, double-spaced document purported to be a complete narrative re-creation of the trial transcript. As explained below, we conclude that the re-created transcript is not sufficiently detailed to allow Johnson a fair opportunity to appeal or to allow meaningful appellate review. We therefore reverse the trial court's denial of Johnson's motion for new trial.[1]

---

[1] The crimes occurred on the night of February 28-29, 2008. On April 29, 2008, a Lee County grand jury indicted Johnson for malice murder, felony murder, two counts of aggravated assault (by assaulting the victim with a deadly weapon (a knife), and by stabbing her with intent to kill), aggravated battery (by stabbing the victim and causing a wound on her arm), theft by taking, financial transaction card theft, and tampering with evidence. Beginning on September 14, 2009, Johnson was tried on all of these charges except theft by taking and tampering with evidence. On September 21, the jury found him guilty of all counts tried. After the trial, the court granted the State's motion to nolle pros the two untried charges based on insufficient evidence.

On October 1, 2009, the trial court sentenced Johnson to serve life in prison for malice

## The Trial

1.      Viewed in the light most favorable to the verdicts, the evidence available for review on appeal, which includes the re-created trial transcript, Johnson's videotaped custodial statement, and most of the exhibits admitted at trial, shows the following.[2]  On the night of February 28-29, 2008, Judge was stabbed to death.  She suffered 36 separate stab wounds, including 10 to her head, three to her neck, six to her liver, and 14 to her back.  She also had multiple cuts on her arms.  Judge was found in her apartment on the floor of her

murder and 20 years for each of the two aggravated assault counts and the aggravated battery count, all to run concurrently with the life sentence.  The sentencing order says that Johnson was also sentenced to life in prison on the felony murder count and two consecutive years on the card theft. The re-created transcript says as to the "Sentence" that the felony murder count was "merged" with the malice murder count and that Johnson was sentenced to "[t]wenty years" concurrent on the card theft.  Because we conclude that Johnson is entitled to a new trial, we need not resolve any sentencing issues.  However, we note for retrial that while the lack of a sentence for felony murder would be proper (although the felony murder count should be vacated as a matter of law rather than merged, see Stewart v. State, 299 Ga. 622, 627 (791 SE2d 61) (2016)), the maximum sentence for the card theft is three years, see OCGA § 16-9-31 (c).  In addition, the guilty verdicts for the two aggravated assaults and the aggravated battery should merge into the malice murder conviction unless the evidence shows that they were separated from the murder by deliberate intervals.  See Schutt v. State, 292 Ga. 625, 627 (740 SE2d 163) (2013); Slaughter v. State, 292 Ga. 573, 575 (740 SE2d 119) (2013).

        As discussed in more detail below, on October 22, 2009, Johnson filed a timely motion for new trial, which he amended with new counsel.  The trial court summarily denied the motion on November 1, 2016. Johnson filed a timely notice of appeal to the Court of Appeals, which properly transferred the case to this Court.  The case was docketed here for the April 2017 term and orally argued on May 2, 2017.

        [2] Johnson's statement was played at trial and admitted as an exhibit.  The originals of all but three of the exhibits introduced at trial were stored separately from the original transcript materials, so those exhibits were not destroyed by the fire.  See footnote 5 below for more details.

children's play room with a knife in her neck. Blood was found outside and inside the apartment, including bloodstains on the driveway and porch, projected bloodstains in the hallway and play room, bloody footprints in the kitchen and bathroom, and blood spots in the cutlery drawer in the kitchen. Bloody fingerprints on the door of the apartment and on a toy in the apartment matched Johnson's fingerprints. When GBI agents searched Johnson's house a few days after Judge's death, they found socks and a shirt with her blood on them. In addition, a bank ATM video showed Johnson trying to use the victim's ATM card on the night of her death, and Judge's driver's license and social security card were found in the bank parking lot.

Four days later, Johnson was arrested, and GBI agents interviewed him for almost four hours. He was advised of his rights under Miranda v. Arizona, 384 U. S. 436 (86 SCt 1602, 16 LE2d 694) (1966), and he signed a waiver of those rights. Johnson first told the agents that he was not at Judge's apartment when she died. He then admitted that he had been there and claimed that he and Judge had sex, she said she wanted to be with him, he said no, she began stabbing herself, and he tried to stop her before running away. After an agent told Johnson that Judge's stab wounds were not self-inflicted, he again changed his

3

story, saying that while Judge was stabbing herself, her "boyfriend" (whom Johnson identified only as "T-man") arrived, Judge and her boyfriend started fighting, Johnson ran to the kitchen to get a knife to defend himself, he returned when he heard Judge scream, he fought with the boyfriend, he then ran away, and the boyfriend followed him and forced him to use the victim's ATM card.

After being told that the physical evidence did not match this account either, Johnson admitted that there was no boyfriend and told the following story: When he rejected Judge, she threatened to tell his wife about their affair. Judge then pulled out a knife and tried to stab him. While they were fighting over the knife, Judge was stabbed and Johnson cut his hand. He then went to the kitchen to get a knife. He returned to the room where Judge was. She had dropped her knife but rushed at him, and he stabbed her. She then took his knife, and he went to the kitchen for another knife. He returned, and they fought more. At some point, he stabbed her in the back. She eventually fell to the floor, and he stabbed her again. He left her lying on the floor, went to the bathroom, cleaned up, and then fled. He tried to use her ATM card because he wanted to get money for her children.

Johnson did not testify at trial. The jury was instructed on self-defense

4

and voluntary manslaughter. It found him guilty of all counts tried. The evidence summarized above was sufficient to authorize a rational jury to return those guilty verdicts. See Jackson v. Virginia, 443 U. S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979). See also Vega v. State, 285 Ga. 32, 33 (673 SE2d 223) (2009).

### Post-Trial Procedural History

2. On October 22, 2009, Johnson's trial counsel filed a timely motion for new trial — a two-page document that summarily alleged only that the verdicts were contrary to the evidence and the law. On March 3, 2010, while presumably still represented by trial counsel, Johnson wrote the trial court's clerk asking for a transcript of his trial; the clerk's office told him to contact the court reporter. On September 24, 2010, Johnson asked the clerk's office for a public defender to represent him on appeal; the clerk's office told him to contact the public defender's office. On March 14, 2011, appellate counsel from the circuit public defender's office was finally appointed to represent Johnson.[3]

Appellate counsel requested the trial transcript. Before the verbatim

---

[3] In October 2011, this Court suspended Johnson's trial counsel from the practice of law for six months based on his professional misconduct in a civil matter. See In the Matter of Bonner, 289 Ga. 838 (716 SE2d 224) (2011).

5

transcript, which had not yet been completed, was provided, a fire at the court reporter's house on November 13, 2011 destroyed the tapes and other materials from which the verbatim transcript was to be prepared. At a motion for new trial hearing on April 30, 2012, Johnson argued that he was entitled to a new trial because the trial transcript was unavailable. The State replied that the procedures of OCGA § 5-6-41 (f) and (g) should be used to re-create the transcript. After briefing by both parties, on November 15, 2012, the trial court ordered the State to re-create the transcript and then provide Johnson time to offer alterations or additions; if the parties could not agree on the transcript, the court would hold a hearing. The State ultimately produced a 14-page, double-spaced narrative transcript of the six-day trial, and Johnson, while not conceding that the re-created transcript was sufficient, filed 12 minor suggestions for changes.

On July 26, 2016, Johnson filed an amended motion for new trial, raising five enumerations of error, including a claim that the lack of the original trial transcript denied him a full opportunity to present an appeal and that the re-

created transcript was not complete.[4] More than seven years after the trial, on October 13, 2016, the trial court held a hearing to consider the re-created transcript as well as the amended new trial motion. After first hearing argument regarding the transcript issue, the court said that Johnson's 12 suggested changes were "well taken," but that they were "form over substance." The court declined to make any changes and rejected Johnson's argument that the re-created transcript was not complete, ruling that "the transcript, as proposed, in and of itself is sufficient to be made the transcript of this trial along with the evidence and [should be] prepared by my court reporter and the clerk of court for an appropriate appeal."[5] Based on the re-created trial transcript and the rest of the record, the trial court then heard argument on Johnson's remaining contentions. On November 1, 2016, the court entered a written order summarily

---

[4] Johnson also argued that the evidence was insufficient, that the trial court should grant a new trial as the thirteenth juror, that the court improperly admitted evidence following the Jackson-Denno hearing on Johnson's custodial statement, and that the court erred in denying his motion for a mistrial based on a witness's improper mention of the victim's children.

[5] The record on appeal also includes all but three of the trial exhibits (photographs of the victim's driver's license and ATM card and a defense exhibit photograph of the victim); pre- and post-trial motions; transcripts of two pre-trial hearings, one on a motion to suppress evidence gathered during the search of Johnson's house and the other on motions to quash the indictment because of unrepresentative jury composition and to suppress Johnson's videotaped custodial statement; and the court's written orders.

denying the motion for new trial. Johnson then filed this appeal.

3. Our decision in this case rests on two fundamental principles: a defendant convicted of a crime has a right to appeal, and a defendant convicted of a felony has a right to a transcript of the trial to use in bringing that appeal. See Wilson v. State, 246 Ga. 672, 675 (273 SE2d 9) (1980). If an appellant is deprived of an adequate transcript, he has effectively been deprived of his right to appeal. See Sheard v. State, 300 Ga. 117, 120 (793 SE2d 386) (2016); Wade v. State, 231 Ga. 131, 133 (200 SE2d 271) (1973). Because Johnson was deprived of an adequate trial transcript, he has been denied his right to appeal, and he is therefore entitled to a new trial.

(a) This is a felony case, and in felony cases the State is responsible for ensuring that a correct and complete transcript is created, preserved, and provided to the defendant upon his request. OCGA § 17-8-5 (a) says:

> On the trial of all felonies the presiding judge shall have the testimony taken down and, when directed by the judge, the court reporter shall exactly and truly record or take stenographic notes of the testimony and proceedings in the case, except the argument of counsel. In the event of a verdict of guilty, the testimony shall be entered on the minutes of the court or in a book to be kept for that purpose. . . .

See also OCGA § 5-6-41 (a) ("In all felony cases, the transcript of evidence and

proceedings shall be reported and prepared by a court reporter as provided in Code Section 17-8-5 or as otherwise provided by law."). This Court has explained that "it is the duty of the state to file the transcript after a guilty verdict has been returned in a felony case. Such is the law in this state, and in this legal era of numerous appeals and numerous post-conviction reviews it is a wise and reasonable requirement." Wade, 231 Ga. at 133.

Although not every portion of a criminal trial is required to be transcribed, most must be reported verbatim, with the express purpose of creating an appropriate record for appeal:

> Where a trial in any civil or criminal case is reported by a court reporter, all motions, colloquies, objections, rulings, evidence, whether admitted or stricken on objection or otherwise, copies or summaries of all documentary evidence, the charge of the court, and all other proceedings which may be called in question on appeal or other posttrial procedure shall be reported; and, where the report is transcribed, all such matters shall be included in the written transcript, it being the intention of this article that all these matters appear in the record. Where matters occur which were not reported, such as objections to oral argument, misconduct of the jury, or other like instances, the court, upon motion of either party, shall require that a transcript of these matters be made and included as a part of the record. . . .

OCGA § 5-6-41 (d). See also Dunlap v. State, 291 Ga. 51, 53 (727 SE2d 468) (2012) (holding that jury voir dire and the opening and closing arguments of the

attorneys are not required parts of a transcript of a non-death-penalty felony

trial).

If a verbatim transcript is not created or is lost before a defendant appeals,

the defendant is not automatically entitled to a new trial, as the State can try to

re-create the transcript under OCGA § 5-6-41 (f) and (g).[6] If "the transcript or

record does not truly or fully disclose what transpired in the trial court," OCGA

§ 5-6-41 (f) allows the transcript to be produced by recollection. If the parties

do not agree about what occurred, "the trial court shall set the matter down for

---

[6] OCGA § 5-6-41 (f) and (g) say in full:

(f) Where any party contends that the transcript or record does not truly or fully disclose what transpired in the trial court and the parties are unable to agree thereon, the trial court shall set the matter down for a hearing with notice to both parties and resolve the difference so as to make the record conform to the truth. If anything material to either party is omitted from the record on appeal or is misstated therein, the parties by stipulation, or the trial court, either before or after the record is transmitted to the appellate court, on a proper suggestion or of its own initiative, may direct that the omission or misstatement shall be corrected and, if necessary, that a supplemental record shall be certified and transmitted by the clerk of the trial court. The trial court or the appellate court may at any time order the clerk of the trial court to send up any original papers or exhibits in the case, to be returned after final disposition of the appeal.

(g) Where a trial is not reported as referred to in subsections (b) and (c) of this Code section or where for any other reason the transcript of the proceedings is not obtainable and a transcript of evidence and proceedings is prepared from recollection, the agreement of the parties thereto or their counsel, entered thereon, shall entitle such transcript to be filed as a part of the record in the same manner and with the same binding effect as a transcript filed by the court reporter as referred to in subsection (e) of this Code section. In case of the inability of the parties to agree as to the correctness of such transcript, the decision of the trial judge thereon shall be final and not subject to review; and, if the trial judge is unable to recall what transpired, the judge shall enter an order stating that fact.

10

a hearing with notice to both parties and resolve the difference so as to make the record conform to the truth." Id. OCGA § 5-6-41 (g) explains that a transcript prepared from recollection is entitled to "the same binding effect as a transcript filed by the court reporter," but only if the parties agree. If the parties do not agree, the trial judge must decide. Id.[7] Here, the trial court concluded that the re-created transcript is correct and sufficient for appeal.

(b) The first part of the trial court's ruling — that the re-created transcript is *correct* — is not reviewable by this Court. See OCGA § 5-6-41 (g)

---

[7] The defendant has the responsibility to ask for the transcript when he needs it. See OCGA § 5-6-42 ("Where there is a transcript of evidence and proceedings to be included in the record on appeal, the appellant shall cause the transcript to be prepared and filed as provided by Code Section 5-6-41[.]"); State v. Hart, 246 Ga. 212, 212-213 (271 SE2d 133) (1980). Once the State has satisfied its obligation under OCGA §§ 17-8-5 (a) and 5-6-41 (a) by providing a verbatim transcript, if the defendant believes the transcript omits or misrepresents a necessary part of the proceeding, he has the responsibility to seek to correct the transcript in that respect. See Glass v. State, 289 Ga. 542, 545 (712 SE2d 851) (2011). See also State v. Nejad, 286 Ga. 695, 698 (690 SE2d 846) (2010) ("Where the transcript is not supplemented, the complaining party does not carry its burden of showing by the record the facts necessary to establish its point."). Cases like Glass and Nejad involve gap-filling in an otherwise verbatim transcript, however, not creating a trial transcript from scratch because the original materials have been lost. See Glass, 289 Ga. at 545 (involving one missing pretrial hearing transcript); Nejad, 286 Ga. at 696 (involving the omission from the trial transcript of the trial judge's informing Nejad of his right to testify and Nejad's indication that his decision not to testify was made after consultation with counsel). In cases where the State cannot provide a verbatim trial transcript when the defendant requests it, the State has the burden to produce an adequate alternative transcript, although the defendant should of course participate in the re-creation process. If the State did not have this burden, the State could ignore its transcript-creating duty altogether and demand that defendants in every felony case use OCGA § 5-6-41 (f) and (g) to try to create the transcript they need to appeal. Thus, the trial court here properly put upon the State, and the State appropriately accepted, the burden of trying to create a complete transcript of Johnson's trial.

11

("In case of the inability of the parties to agree as to the correctness of such transcript, the decision of the trial judge thereon shall be final and not subject to review[.]"); Leeks v. State, 296 Ga. 515, 518 (769 SE2d 296) (2015). Appellate review is available, however, as to whether the re-created transcript is *complete* — meaning sufficient for Johnson to identify errors and this Court to evaluate the errors then enumerated. An appellant is entitled to a "complete and correct" transcript, Wilson, 246 Ga. at 675, one that "disclose[s] what transpired in the trial court" not only "truly" but "fully," OCGA § 5-6-41 (f).

Complete does not always mean verbatim; "where the trial is not reported or the transcript of the proceedings for any other reason is not available and the evidence is prepared from recollection, it may be prepared in narrative form." OCGA § 5-6-41 (d). But even a narrative transcript must be sufficiently detailed to allow the defendant to identify alleged errors and to allow meaningful appellate review. When extensive and important parts of the trial transcript have been lost, re-creating a complete transcript may, for example, require calling witnesses who testified or other individuals who were present for the trial. See, e.g., Mosley v. State, 300 Ga. 521, 524-526 (796 SE2d 684) (2017) (concluding that Mosley was not entitled to a new trial when the State re-created the

12

transcript of one missing day of trial based on a hearing at which three of the four witnesses called that day testified along with Mosley's trial counsel and the prosecutor).

Such measures were not taken to re-create the transcript in this case. On the contrary, at the hearing on the re-created transcript, the prosecutor explained that the State prepared it from the trial court's notes, the notes of an investigator from the district attorney's office who was present at the trial, and the notes of the different prosecutor who tried the case. In evaluating the new transcript, the trial judge relied solely on those three sets of notes and his own recollection of the trial held more than seven years earlier.[8] The State apparently made no attempt to interview or call to testify anyone who had been a witness or present for the trial. Johnson's appellate counsel said that he spoke with his client about what had occurred during the trial, but he represented to the court without objection that he was unable to obtain any assistance from Johnson's trial

---

[8] Johnson's counsel represents in his brief that he was given access only to the trial court's notes and that those notes consist of only nine pages, which focus on the evidence admitted rather than the substance of the testimony. And one may certainly question whether the sorts of notes used by the State would identify, much less highlight, errors made by the prosecution or the trial court to Johnson's detriment. See Hardy v. United States, 375 U. S. 277, 290 (84 SCt 424, 11 LE2d 331) (1964) (Goldberg, J., concurring) ("[A] lawyer appointed to represent the interests of a defendant should not be required to delegate his responsibility of determining whether error occurred at trial to participants at that trial whose conduct may have formed the very basis for the errors.").

13

counsel, who "had no notes and no recollection" and "basically refused and failed to assist" in preparing the transcript; by the time of the hearing, trial counsel had died.

The result of this lackluster information-gathering process was a 14-page transcript — double-spaced, with wide margins and much additional white space — purporting to summarize a six-day trial and sentencing hearing. This elliptical transcript consists of brief summaries of the trial testimony given by the State's 14 witnesses. It mentions the cross-examination of only two witnesses, but it is not clear whether that is because Johnson's trial counsel did not cross-examine the other witnesses or because the transcript simply does not delineate between testimony given on direct examination and testimony given on cross-examination.[9] It is likely the latter, because in the brief summary of one witness, which contains no mention of cross-examination, the transcript notes that "Defendant's Exhibit 1" was admitted. More details generally are given about the 58 exhibits offered into evidence, including which witness

---

[9] In one of the two mentions of cross-examination, the re-created transcript says that "the defense contended" that the fingerprints being discussed by the witness could have belonged to someone else. The State objected, and the trial court "ruled that the defense could not raise that issue because Defendant had admitted to being at the apartment and was claiming self-defense." This description is perplexing, as the defense does not "contend" anything by examination of witnesses.

14

testified about the exhibit and if it was admitted. All but one of the exhibits were admitted; the exception was an ATM log tendered as a "business record." The re-created transcript does not explain why this evidence was not admitted and does not indicate that Johnson raised any objection to it.

More troubling, although the re-created transcript notes that Johnson raised 14 objections to the admission of evidence, all of which were overruled, it does not describe the basis for any of these objections or for any of the trial court's rulings. The re-creation also notes that Johnson moved for a mistrial twice based on violations of two granted motions in limine and that the trial court denied both motions. In one instance, the court instructed the jury to disregard the witness's use of the word "murder." In the other instance, the transcript says that after the first responding police officer testified that he found Judge's children when he arrived on the scene, in violation of a motion in limine granted on the first day of trial "to exclude any evidence of the victim's young children being found in the apartment with the deceased victim," the trial court concluded there was no prejudice from the witness's mention of the victim's children because the victim's father "previously testified that the children were with their mother, the victim." No such testimony, however, is reflected in the

15

account of the father's testimony in the re-created transcript. The court also gave a curative instruction "crafted and approved by counsel for both sides." The substance of the instruction, however, is not described.

A similar problem is found in the description of a GBI agent's testimony. The re-created transcript says that when the agent "mentioned that Defendant had been arrested as a juvenile," the trial court "objected" to this testimony (although objecting is normally done by the opposing party, rather than the court) and "restricted him from testifying as to that matter." Again, important details are not provided, including whether a curative instruction was requested or given.

Also unfortunately cursory is the re-created transcript's account of the jury charge, which consists only of a list of pattern jury instruction numbers and titles that were given. There is no indication as to what instructions were requested by either party or discussed at the charge conference, whether the court denied any instructions requested by Johnson, or whether (and if so, how) the court modified these pattern instructions to fit the facts of the case.[10]

---

[10] For example, the instructions on self-defense and voluntary manslaughter reflect inconsistent defense theories, as the former posits that Johnson killed the victim out of justified fear, while the latter asserts that Johnson killed the victim due to provocation and passion. See, e.g.,

Finally, the re-creation recites that no objections were made by the parties during jury selection, opening statements, and closing arguments.[11]

(c)  For these reasons, when considered as a whole, the re-created narrative transcript lacks sufficient accounts of crucial parts of Johnson's trial. See Sheard, 300 Ga. at 121 ("[T]he jury charge — which is missing here — is a crucial portion of trial in which jurors are instructed on the applicable law, on how to evaluate the evidence, and on how to deliberate and reach a verdict[.]"); OCGA § 17-8-58 (b) (authorizing plain error review of jury instructions not objected to at trial). See also Hardy v. United States, 375 U. S. 277, 282 (84 SCt 424, 11 LE2d 331) (1964) ("We conclude that [new appellate] counsel's duty cannot be discharged unless he has a transcript of the testimony and evidence presented by the defendant and also the court's charge to the jury, as well as the testimony and evidence presented by the prosecution."). The lack of sufficient detail is particularly problematic because Johnson is represented by new counsel

Taylor v. State, 282 Ga. 693, 695-696 (653 SE2d 477) (2007). Although the re-created transcript shows that both charges were given, it does not show whether Johnson requested both charges, whether the State requested one, or whether the trial court charged one or both sua sponte.

[11]  The re-created transcript makes no effort to describe the substance of those portions of the trial, but as discussed previously, these portions of a trial are not required to be transcribed. See Dunlap, 291 Ga. at 53.

17

on appeal. See <u>Sheard</u>, 300 Ga. at 121 ("[F]orcing appellate counsel — who was not involved in the original trial — to divine error without the aid of a transcript is not only fruitless but also hinders counsel's ability to adequately and zealously represent [his client] on appeal."). See also <u>Hardy</u>, 375 U. S. at 279-280 ("[W]hen, as here, new counsel represents the [defendant] on appeal, how can he faithfully discharge the obligation which the court has placed on him unless he can read the entire transcript?").[12]

Johnson asserts that there may have been errors made by the trial court or his trial counsel during the trial, but that without an adequate transcript he has no way of knowing. We agree. In cases where a verbatim transcript is missing just one or a few parts of the trial, particularly parts that are not required to be transcribed in the first place, this Court has held that the appellant is not entitled to a new trial unless he can point more specifically to some error that allegedly occurred during the omitted part. See, e.g., <u>Ruffin v. State</u>, 283 Ga. 87, 88 (656 SE2d 140) (2008) ("[T]he absence of a transcript of voir dire, opening statement, bench conferences and the polling of the jury . . . 'cannot be

---

[12] Appellate counsel's difficulty in representing Johnson is further magnified by trial counsel's death and initial unwillingness to help new counsel identify potential errors for appeal.

18

reversible error absent an allegation of harm resulting from the deletion.'" (quoting Smith v. State, 251 Ga. 229, 230 (304 SE2d 716) (1983)). See also Sheard, 300 Ga. at 120 ("The mere fact that a portion of a transcript is missing does not automatically entitle a defendant to a new trial. Such omissions cannot be reversible error absent an allegation of harm resulting from the deletion. However, where the missing transcript prevents adequate review of the trial below, a new trial is warranted." (citations and punctuation omitted)).

We do not normally assume that an error occurred during a mere gap in a trial transcript. On the contrary, we presume that a trial court followed the law and that trial counsel rendered adequate assistance. See Edwards v. State, 301 Ga. 822, 827 (804 SE2d 404) (2017); Batten v. State, 295 Ga. 442, 445 (761 SE2d 70) (2014). Those presumptions, however, are just that — presumptions, which can be rebutted by what is shown in the record.

An appeal is Johnson's chance to point to the record and overcome those presumptions. He can only do that with an adequate transcript. In this case, where the *whole* original verbatim transcript of his trial is lost and the narrative re-creation is *manifestly* inadequate, Johnson has not been given a fair opportunity to identify any trial errors and resulting harm or deficient

19

performance by counsel and resulting prejudice.  See Sheard, 300 Ga. at 120-121 (ordering a new trial where the transcript of the final day of trial, which included crucial parts of the trial, was missing and was not adequately re-created); Wilson, 246 Ga. at 674-676 (concluding, when 21 of the 34 trial tapes were missing, that "the omissions in the transcript preclude us from finding that [the omissions] were immaterial and harmless"); Montford v. State, 164 Ga. App. 627, 628 (298 SE2d 319) (1982) (ordering a new trial when the court reporter refused to make the transcription and all of the tapes of the trial "were very difficult to understand and contained much which was inaudible," making them impossible for another court reporter to fully transcribe).  See also McKinney v. State, 300 Ga. 562, 562 n.1 (797 SE2d 484) (2017) (noting that McKinney was retried because the transcript of his first trial was lost); Godbee v. State, 153 Ga. App. 115, 115 (264 SE2d 578) (1980) (noting that Godbee's motion for new trial was granted because the transcript of the trial was lost).[13]

---

[13] In Cole v. United States, 478 A2d 277 (D.C. 1984), the District of Columbia's Court of Appeals addressed a situation similar to the one in this case, including the complete loss of the original trial transcript and the appointment of new appellate counsel for the defendant.  See id. at 279.  The court held that the defendant's right to appeal was stymied when the re-created transcript was a two and one-half double-spaced summary of a two-day trial that briefly summarized the direct testimony of each of the witnesses and the cross-examination of one witness, the documentary evidence presented, and closing arguments, but made no reference to the cross-examination of the other two witnesses and included no summary of the trial court's instructions to the jury.  See id. at

(d)     Besides arguing that the re-created transcript is an adequate representation of the trial, the State contends here, as it did at the hearing on the re-created transcript, that the narrative re-creation is sufficient simply because it shows that the evidence that Johnson murdered Judge was overwhelming, largely due to his videotaped statement; thus, the State insists, any errors that trial counsel or the trial court might have committed were necessarily harmless. But this Court cannot evaluate the strength of the evidence without a complete account of the overall evidence, and we certainly cannot evaluate the effect of unknown errors.  See Montford, 164 Ga. App. at 629 ("It is true that where the transcript itself shows error is harmless, it may so be declared. Here, however, the transcript omissions preclude us from ascertaining if errors were made and if so, whether they were harmless.").  Engaging in such speculation would not provide Johnson the appeal to which he is entitled.  We cannot hold that an appellant is not entitled to a complete trial transcript simply because it appears

280, 286 (granting a new trial based on the insufficiency of the re-created transcript, even though D.C.'s re-creation rule, unlike Georgia's, places the burden on the appellant to create a substitute record if the verbatim transcript is lost).  See also Simmons v. State, 200 S2d 619, 621-622 (Fla. Dist. Ct. App. 1967) (granting a new trial when the trial transcript was lost after concluding that re-creation efforts would not produce an adequate substitute because the appellant had new counsel on appeal, trial counsel had quit under acrimonious circumstances and so was unlikely to cooperate, and almost two years had passed since the trial).

from the record that exists that he is clearly guilty. Because Johnson has been deprived of the ability to appeal his convictions, the trial court should have granted his motion for a new trial.[14]

Judgment reversed. All the Justices concur.

Decided October 2, 2017.

Murder. Lee Superior Court. Before Judge Peagler.

Kevin Kwashnak, for appellant.

Plez H. Hardin, District Attorney, Lewis R. Lamb, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Michael A. Oldham, Assistant Attorney General, for appellee.

[14] Because the evidence in the record, in particular Johnson's videotaped statement, was legally sufficient to support the jury's guilty verdicts, "the State may, at its option, choose to retry [Johnson] on the offenses for which there was a guilty verdict." Sheard, 300 Ga. at 121 n.5.