307 Ga. 140
FINAL COPY

S19A0953.  HENRY v. THE STATE.

BOGGS, Justice.

After a jury trial in 2016, Tyron Henry was acquitted of malice murder but found guilty of felony murder and possession of a firearm during the commission of a felony in connection with the death of Michael Johnson.[1] His amended motion for new trial was denied, and he appeals, asserting as his sole enumeration of error the trial court's refusal to give his requested jury instructions on the affirmative defense of justification. In light of this Court's recent decision in *McClure v. State*, __ Ga. __ (__ SE2d ___) (2019), we conclude that the trial court erred in refusing to

---

[1] The crimes occurred on the night of July 10, 2015. On November 24, 2015, a Chatham County grand jury indicted Henry for malice murder, felony murder, and possession of a firearm during the commission of a crime. At a trial on October 24 to 27, 2016, a jury found Henry not guilty of malice murder but guilty of felony murder and possession of a firearm during the commission of a felony. The trial court sentenced Henry to life imprisonment on the felony murder count and to five years to serve consecutively on the firearm count. On October 28, 2016, Henry's trial counsel filed a motion for new trial, which subsequent counsel amended on June 15, 2017. Henry's amended motion for new trial was heard by the trial court on August 16, 2018, and the motion was denied on January 10, 2019. Henry's notice of appeal was filed on January 22, 2019, and the case was docketed in this Court for the April 2019 term and submitted for decision on the briefs.

give the requested instructions on justification by self-defense or the defense of others. Because we cannot say that it is highly probable that this error did not contribute to the jury's verdicts, we reverse.

The evidence presented at trial showed that at around 10:00 p.m. on July 10, 2015, Henry and two friends, Nikki Miller and Jamonie "Jay" Williams, were on Montgomery Street in Savannah. Henry and Miller were walking, and Williams was riding his bicycle. When they reached the intersection with Victory Drive, a car on Victory was stopped at the intersection, even though the traffic light on its side was green. The three waited for the light to change, and as they crossed the street on the light, the driver of the car, later identified as Johnson, "obnoxiously" honked his horn at them and turned to follow them "real close," making them feel unsafe. After Williams asked Johnson why he was "following alongside of us," and if he knew them, Johnson abruptly braked, put his car in reverse, and pulled directly in front of Miller and Henry, almost hitting them.

According to Williams, Henry and Johnson exchanged some words, which Williams could not hear. Williams testified that Johnson then tried to knock Williams off his bicycle with his car, and Williams avoided him

2

by jumping the curb. At that point, Johnson reached into his console, causing Williams to believe that he might have retrieved a firearm. Williams testified that Johnson then got out of his car and confronted Miller and Henry "eye to eye." Williams testified that he was scared, that he believed "there may be shooting coming," and that he believed his "life was in danger," so he took shelter behind a nearby truck. At that point, according to Williams, he saw Henry take off his backpack and retrieve a pistol. When the prosecutor asked during direct examination, "And then what happened?" Williams responded, "He shoots [sic] him," but when asked to describe what happened, he testified that he "just heard gunshots" and "instantly blank[ed] out," then jumped on his bike and fled.[2] Williams testified that, after changing clothes, he returned to the scene to, he said, borrow some money for a drink.

Miller, on the other hand, testified that after Williams and Johnson exchanged words, Miller attempted to defuse the situation, but Williams "ended up saying some more things. And I was telling him to be quiet,

---

[2] Henry and Miller fled the scene as well, and none of the three called police. A police investigator eventually identified Williams through surveillance camera footage, and Williams identified Miller and Henry. Both Williams and Miller testified for the State.

but he wouldn't listen." According to Miller, Johnson turned around and came back up the street toward Williams; when Miller saw how close Johnson was to Williams, she asked Henry to "go grab Jay" and Henry did so but told her to "keep going." She continued to walk, heard gunshots, and then ran. She did not see Williams again, but when she turned to look for Henry, he "was beside [her]." Henry and Miller ran to his house. Miller testified that later, in the middle of the night, she woke up and felt Henry shaking and heard him "saying that he think[s] he shot — that he think[s] he killed a guy."[3] Miller testified that she had seen Henry with a silver revolver in the past, and that Henry had a book bag that night, but she did not testify that he had a firearm in the bag or that she saw him pull one out.

The medical examiner testified that Johnson sustained two bullet wounds, one to the chest and one to the head, either of which could have been fatal. The medical examiner also testified that Johnson's blood alcohol content was 0.147, and that he had cocaine in his system at a concentration of .25 mg/L. The police also found packaged powder cocaine

---

[3] Later, Henry urged Miller to claim she knew nothing, and he fled the state when he learned the police were looking for him.

in Johnson's wallet. The medical examiner testified that these levels of alcohol and cocaine would generally enhance aggressiveness and poor judgment.

1. Though Henry has not challenged the sufficiency of the evidence to support his convictions, as is this Court's practice in murder cases, we have reviewed the record to determine the legal sufficiency of the evidence. We conclude that the evidence, when viewed in the light most favorable to the verdicts, was sufficient to enable a rational trier of fact to conclude beyond a reasonable doubt that Henry was guilty of the crimes for which he was convicted. See *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (99 SCt 2781, 61 LE2d 560) (1979).

2. Henry's sole enumeration of error is the trial court's refusal to give his requested jury instructions on justification by self-defense and the defense of others. In his opening statement, Henry's trial counsel was candid about asserting two apparently inconsistent defenses. He asserted that the evidence would show that Williams lied to the police and was actually the person who exchanged words with Johnson leading up to the shooting, and that — as the State acknowledged in its opening statement — Williams fled, changed clothes, and was on Facebook a day

5

or two after the incident trying "to get rid of a .38 with a body on it." Henry's counsel also pointed out that Johnson was drunk and high, and repeatedly threatened Williams, Henry, and Miller. Henry's counsel added that the police officer sitting at counsel table with the prosecutor was going to testify that "part of her training is she doesn't have to wait until a suspect who's been told to stop, to stop approaching her, she doesn't have to wait till he beats the c\*\*p out of her and takes her weapon to defend herself. So let's go with that set of facts. Self defense." Henry's counsel concluded his opening statement:

> Do I know which one it is? No, but I don't have to prove that. They [the prosecutors] do. Same set of facts. One set of facts, it can be self defense. Other set of facts, some other dude did it. Doesn't happen very often. But this is one of those cases where take your pick. It's undisputed. Most of the facts, he's right, are undisputed. I'm standing here telling you that now. . . .

> It's a confluence of the perfect storm. And it doesn't happen very often. But no matter which set of facts you choose to believe, all of these facts can point two different directions. Jamonie Williams did get on Facebook and brag. There's no question about that. He did it. He has to own it. But see, here's the thing. The funny part about it is Jamonie Williams lied to the police. Jamonie Williams makes the threats. And then they choose to believe Jamonie Williams . . . .

During his cross-examination of Williams, who testified for the State, Henry's counsel asked, "Did it ever dawn on you that this may have

6

been self defense?" but the State's objection to the question was sustained before Williams answered. After the State rested its case, Henry elected not to testify. At the brief charge conference held immediately thereafter, Henry's counsel objected to the trial court's refusal to give his requested jury instructions on justification.[4] The State then argued that because Henry elected not to testify, he had abandoned his affirmative defenses, and moved for the trial court to prohibit defense counsel from making any argument to the jury on those points. The trial court agreed and instructed defense counsel, "[Y]ou can't say that the jury can speculate about whether or not he was frightened or that he acted in self defense. That will definitely require me to rebuke you vigorously." Henry's trial counsel then asked if he would be allowed to argue from Williams' testimony that *Williams* was afraid of getting shot, and the trial court said it would allow it but added, "Be careful." Henry's counsel asked,

---

[4] Henry submitted photocopies of Georgia Suggested Pattern Jury Instructions, Vol. II: Criminal Cases (4th Ed.) §§ 3.00.00 - 3.10.13, including an instruction that, once an affirmative defense is raised, the State has the burden to disprove it beyond a reasonable doubt; a general charge on justification; instructions on the use of force in defense of self or others, including that the State has the burden of proving beyond a reasonable doubt that the defendant was not justified; an instruction on the doctrine of reasonable belief; and an instruction that there is no duty to retreat in order to be justified.

"How's that?" and the trial court repeated, "Right. Be very careful." Henry renewed his objection to the omission of his requested charges after the trial court instructed the jury. In denying Henry's motion for new trial, the trial court relied on the fact that Henry did not testify, and the absence of testimony about the substance of any words spoken between Henry and Johnson before the shooting, to conclude that "there was a lack of slight evidence to authorize instructing the jury on justification."

(a) The trial court's refusal of Henry's requested instructions was error in light of our subsequent decision in *McClure*. There, this Court granted certiorari after the Court of Appeals, over a vigorous dissent, affirmed the trial court's refusal to instruct the jury on justification in defense of self and justification in defense of habitation, reasoning that in order to obtain those instructions the defendant was required to admit the elements of aggravated assault as charged. See *McClure v. State*, 347 Ga. App. 68 (2) (815 SE2d 313) (2018). On certiorari, this Court considered the following questions: "What, if anything, must a criminal defendant admit in order to raise an affirmative defense? Must the defendant make any such admissions for all purposes or only for more

8

limited purposes?" We answered those questions as follows:

> A criminal defendant is not required to "admit" anything, in the sense of acknowledging that any particular facts are true, in order to raise an affirmative defense. To the extent a defendant in raising an affirmative defense accepts for the sake of argument that he committed the act alleged in a charge, the defendant may do so only for the limited purpose of raising the affirmative defense at issue.

*McClure*, 306 Ga. at 857. We reiterated that "(t)o authorize a requested jury instruction, there need only be slight evidence supporting the theory of the charge." (Citation and punctuation omitted.) Id. at ___ (1). And if the State's case raises the issue, the defendant need not present evidence. Id. Moreover, the defendant may pursue apparently contradictory defenses "so long as some evidence support[s] each theory." (Citation omitted.) Id. at __ (1). Thus, we vacated the judgment and remanded to the Court of Appeals to determine whether the requested instructions were supported by slight evidence and, if so, whether the error in refusing to give the requested instructions was harmful. See id. at __ (2).[5]

We now turn to those questions in the case before us, considering whether slight evidence supported Henry's requested jury instructions,

---

[5] See also *Pennington v. State*, __ Ga. __ (__ SE2d __) (2019) (holding that Court of Appeals erred in affirming trial court's denial of request to charge on affirmative defense solely because defendant did not admit underlying crime).

and, if so, whether the trial court's failure to give those charges was harmful error. We answer both questions in the affirmative.

(b) The State presented more than slight evidence to support Henry's requested jury instructions. Both Williams and Miller testified that Johnson was behaving aggressively and irrationally, causing them to feel unsafe and to fear that violence might occur. Their testimony was corroborated by evidence that Johnson's blood alcohol content was nearly twice the legal limit and that he had .25 mg/L of cocaine in his system. After blowing his horn for no apparent reason, following Henry and his companions in a manner that made both Williams and Miller fearful, engaging in an extended argument with Williams or Henry, pulling suddenly in front of Henry and Miller, and attempting to run over Williams, Johnson then reached into his console before getting out of his car to confront Henry and Miller "eye to eye." Assuming, for the sake of argument, that Henry was the shooter, only after this escalating series of events did Henry remove a weapon from his backpack and shoot Johnson. The testimony of the State's witnesses established more than the slight evidence necessary to support the requested charges on justification, and we therefore conclude that the trial court erred in

refusing to give them. See *McClure*, __ Ga. at __ (1).

(c) "The test for determining nonconstitutional harmless error is whether it is highly probable that the error did not contribute to the verdict." (Citations and punctuation omitted.) *Shah v. State*, 300 Ga. 14, 21 (2) (b) (793 SE2d 81) (2016). And in determining whether such an error is harmless, we assess the evidence from the viewpoint of reasonable jurors, not in the light most favorable to the verdicts. See *Thompson v. State*, 302 Ga. 533, 542 (III) (A) (807 SE2d 899) (2017). In the context presented here, we cannot say that the trial court's instructional error was harmless. Henry laid out his theory of the case — including justification — during opening statement but then was refused jury instructions on those points. The trial court's refusal to give these requested instructions deprived the jury of the necessary tools to evaluate the charges against Henry and to reach a verdict; jury instructions are the "lamp to guide the jury's feet in journeying through the testimony in search of a legal verdict." (Citation and punctuation omitted.) *Chase v. State*, 277 Ga. 636, 639 (2) (592 SE2d 656) (2004).

Moreover, the trial court refused to allow Henry even to *argue* to the jury that the evidence presented at trial showed that he was justified

11

in defending himself and his companions, agreeing with the State that Henry's failure to testify constituted abandonment of his affirmative defenses. As a result, Henry's closing argument was truncated and limited to arguing that Williams was the actual shooter and relying upon the State's burden to prove its case. In effect, Henry was forced to choose between his right not to testify and the assertion of affirmative defenses supported by the State's evidence. As a result, he was deprived of significant defenses that he had outlined for the jury in his opening statement. Under these circumstances, we cannot say that it is highly probable that the trial court's instructional error did not contribute to the verdicts against Henry, and we therefore must reverse Henry's convictions.[6]

*Judgment reversed. All the Justices concur.*

---

[6] Because, as noted above, the evidence in the record was legally sufficient to support the jury's guilty verdicts, the State may choose to retry Henry on the offenses for which the jury returned a guilty verdict. See *Johnson v. State*, 302 Ga. 188, 199 (3) (d) n. 14 (805 SE2d 890) (2017).

Decided October 21, 2019.

Murder. Chatham Superior Court. Before Judge Abbot.

*Robert L. Persse*, for appellant.

*Meg E. Heap, District Attorney, Jennifer L. Parker, Abigail B. Long, Greg McConnell, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Katherine D. Emerson, Assistant Attorney General*, for appellee.